**STATE of Indiana on the Relation of Teri Lee MEADE, Relatrix,**

**v.**

**The MARSHALL SUPERIOR COURT II and The Honorable Dean Colvin, as Judge Thereof, Respondents.**

No. 50S00–9405–OR–409.

Supreme Court of Indiana.

Dec. 8, 1994.

Kim L. Anderson, Valparaiso, Mark Bates, Schererville, for relatrix.

Tom A. Black, Plymouth, for respondents.

SHEPARD, Chief Justice.

Does a court which dissolved a marriage and determined child custody and visitation maintain continuing jurisdiction which prevents another court from entertaining petitions for protective orders which effectively modify the divorce decree? We hold that such protective orders must be filed in the court which heard the divorce, absent emergency or other good cause for going to a second court.

## Facts and Case History

In September 1991, Teri Lee Meade and Paul E. Levett were divorced in the Marshall Circuit Court. The court ordered joint custody of their children, Whitney (now age 13) and Adam (now age 12). Levett received physical custody, and Meade was given periodic visitation rights.

Both Levett and Meade were initially satisfied with the custody arrangement. In April 1993, however, Levett petitioned the Circuit Court to modify its decree. He asked that the court limit Meade's visitation and phone contacts, increase her child support obligation, and divide certain medical bills.

One month later, Levett married Jeannie Lewis. Whitney, Adam, and Mr. Levett moved into the new Mrs. Levett's home, where she also operated a day care center. Meade and the Levetts soon began having difficulties. Among other things, the couple objected to Meade's daily telephone calls to her children on Mrs. Levett's business telephone line. Meanwhile, the court considered and granted Mr. Levett's request to modify Meade's support obligation. The court refused, however, to limit her phone access, stating she was permitted to call a reasonable number of times at reasonable hours.

The problems continued. On August 5, Meade petitioned Circuit Court for physical custody of her children. Thereafter there was a confrontation between Meade and Mrs. Levett at a local festival. A month after this confrontation, on October 5, Mrs. Levett petitioned Marshall Superior Court II for a permanent protective order. In the petition, Mrs. Levett requested that the court prohibit Meade from any and all contact with the Levetts, including Whitney and Adam. Mrs. Levett later modified her request, asking that the court allow Meade to see her children but prohibit her from visiting them at the Levett home or calling them on Mrs. Levett's business phone.

Meade moved to dismiss the Superior Court action on the grounds that it constituted an improper collateral attack on the visitation order of the Circuit Court. She also filed a Trial Rule 42(D) motion asking the Circuit Court to consolidate the cases in that court, and she petitioned Circuit Court for an emergency transfer of custody of the children to her care. All three motions were ultimately denied.

The Superior Court proceeded to a hearing, and it granted a temporary protective order (TPO) on October 28, prohibiting Meade from calling her children on Mrs. Levett's business line or entering the Levett property. The Superior Court agreed to permit an interlocutory appeal of its order denying Meade's motion to dismiss, and she filed a praecipe on February 28, 1994.

Meade petitioned this Court for a writ of mandate against the Superior Court. She argued that the TPO conflicted with the decree establishing her visitation rights and requested that we resolve the jurisdictional conflict. We granted her request for a permanent writ, vacated the TPO, and ordered the Superior Court to relinquish jurisdiction. We now memorialize the reasons for that action with this opinion.

## Writs and Jurisdictional Conflicts

Original actions are viewed with disfavor, and we do not grant writs of mandamus and prohibition where there is an adequate remedy through the appellate process. Ind.Original Actions Rule 2(E); e.g., State ex rel. Janesville Auto Transp. Co. v. Superior Court (1979), 270 Ind. 584, 387 N.E.2d 1330. Article VII, section 4 of the Indiana Constitution, however, authorizes this Court to supervise the jurisdiction of the state's other courts, and we will entertain original actions to resolve jurisdictional conflicts. Ind.Appellate Rule 4(A)(5); Orig.Act.R. 1(A); see State ex rel. International Harvester Co. v. Allen Circuit Court (1976), 265 Ind. 175, 352 N.E.2d 487. The conflict in this case between the Superior Court's authority to issue a protective order against Meade and the Circuit Court's continuing authority over Meade's visitation warrants our attention.

When an action is pending before a court of competent jurisdiction, other courts must defer to that court's extant authority over the case. Courts observe this deference in the interests of fairness to litigants, comity

between and among the courts of this state, and judicial efficiency. *E.g., State ex rel. Ferger v. Circuit Court* (1949), 227 Ind. 212, 84 N.E.2d 585. This principle is implemented by Trial Rule 12(B)(2), which allows a party to move for dismissal on the grounds that the same action is pending in another Indiana court. This rule applies where the parties, subject matter, and remedies of the competing actions are precisely the same, and it also applies when they are only substantially the same. *See International Harvester Co.*, 265 Ind. at 178–79, 352 N.E.2d at 489–90.

### These Conflicting Causes

■ We conclude that the Circuit Court had jurisdiction over substantially the same action when Mrs. Levett petitioned the Superior Court for the permanent protective order. Ind.Code Ann. § 34–4–5.1–3 (West Supp.1993) (repealed and replaced 1994).[1] The Circuit Court acquired jurisdiction over the Meade/Levett dissolution in 1991, and that jurisdiction continues until the Levett children reach maturity. *See State ex rel. Werthman v. Superior Court* (1983), Ind., 448 N.E.2d 680. The Superior Court must defer to this authority because Mrs. Levett's petition affects the same subject which is under the jurisdiction of the Circuit Court: the circumstances under which Meade could exercise her visitation rights. For example, the Circuit Court established the time and conditions under which Whitney and Adam could see their mother, including reasonable telephone contact, in its visitation order.

The Superior Court's protective order, whether raised under the name of Mr. or Mrs. Levett, directly conflicted with the Circuit Court's continuing jurisdiction over these visitation arrangements. Mrs. Levett's petition makes clear that the protective order could even have eviscerated the visitation order, prohibiting Meade from having *any* contact with her children. Ultimately, the TPO and protective order seek to usurp the Circuit Court's jurisdiction. Such an expropriation will not be allowed.

The Levetts may not circumvent the comprehensive statutory framework for child custody and visitation orders through this collateral attack. The prohibition against collateral attacks is long-standing. *See State ex rel. McClure v. Marion Superior Court* (1959), 239 Ind. 472, 158 N.E.2d 264 (vacating collateral injunction in favor of prior action involving appointment power of governor); *State ex rel. Montgomery v. Superior Court* (1958), 238 Ind. 664, 154 N.E.2d 375 (vacating collateral injunction in favor of pending action to establish possession of business). Such machinations are especially egregious in this context because the interests of children require stability and continuity in the legal process.[2] *Cf. In re Lemond* (1980), 274 Ind. 505, 413 N.E.2d 228 (holding judges and attorneys in criminal contempt for permitting father to attack collaterally mother's custody of child through sham Child in Need of Services action).

We emphasize that all courts must be open to entertain requests for temporary or emer-

1. In 1994, the General Assembly rewrote the sections on protective orders. Under the scheme in place in 1993, courts could issue "temporary protective orders," Ind.Code Ann. § 34–4–5.1–2 (West Supp.1993), and "permanent protective orders," Ind.Code Ann. § 34–4–5.1–3 (West Supp.1993). In the new version, courts may issue "emergency protective orders," Ind.Code Ann. § 34–4–5.1–2.3 (West Supp.1994), and "protective orders," Ind.Code Ann. § 34–4–5.1–2 (West Supp.1994). The principles we discuss today apply equally to the new sections.

2. The General Assembly has demonstrated concern about the relationship between protective orders and dissolution proceedings and the importance of jurisdictional continuity in child custody cases. The current provisions relating to protective orders provide that if the petitioner and respondent are married, a protective order

expires when a petition for dissolution is filed and the court in which the dissolution is filed addresses the problem through a temporary restraining order under Ind.Code Ann. § 31–1–11.5–7 (West Supp.1994). Ind.Code Ann. § 34–4–5.1–5(b) (West Supp.1994); *see also* Ind.Trial Rule 65(E) (providing for temporary restraining orders in domestic relation cases). In addition, the legislature has provided for jurisdictional stability among the states by adopting the Uniform Child Custody Jurisdiction Act, Ind.Code Ann. ch. 31–1–11.6 (West Supp.1994). The purpose of this act is to "discourage continuing controversies over child custody" and to "avoid re-litigation of custody decisions of other states in this state." Ind.Code Ann. § 31–1–11.6–1(4), (6). Our decision in this case is consonant with the legislature's approach in this area.

gency protective orders against a threatening parent where the facts of the situation demonstrate good cause for not petitioning the court where the dissolution was heard. Situations will arise in which the custodial parent fears for his or her safety or the safety of the children and, due to the imminence of the threat or distance from the court of first jurisdiction, must seek protection from another court. Such was not the case here. Mrs. Levett waited a month after the allegedly provoking incident to petition for the protective order. Moreover, she sought the order from a different court in the same courthouse. Finally, Mrs. Levett originally requested a hearing for a permanent protective order, rather than seeking an immediate temporary or emergency order. Her decision was not motivated by considerations of distance or time. She was just looking for a way to avoid the regular procedure.

We hold that where no emergency situation exists, as it did not in this case, the court where the divorce, custody, and visitation matters were heard retains continuing jurisdiction over the case. A party should go to that court to secure a protective order, absent some extraordinary circumstance.

### Conclusion

For these reasons we issued a permanent writ vacating the protective order against Meade and ordering the Superior Court to dismiss the cause.

DeBRULER, GIVAN, DICKSON and SULLIVAN, JJ., concur.