Daniel RIOS, Appellant–Respondent,

v.

Irene RIOS, Appellee–Petitioner.

No. 48A02–9904–CV–245.

Court of Appeals of Indiana.

Sept. 24, 1999.

Patrick J. Cunningham, Jr., Anderson, Indiana, Attorney for Appellant.

William Byer, Jr., Byer & Byer, Anderson, Indiana, Attorney for Appellee.

## OPINION

GARRARD, Judge

### Case Summary

Daniel Rios ("Father") appeals the denial of his motion to dismiss an emergency petition for change of custody and modification of custody filed by Irene Rios ("Mother"). We reverse.

### Issue

Father presents one issue for our review which we restate as: whether an Indiana circuit court abused its discretion by asserting jurisdiction over the issues of this custody case. Resolution of this issue requires an examination of Trial Rule 12(B)(8) and the Uniform Child Custody

Jurisdiction Law[1] ("UCCJL" or "UC-CJA").

### Facts and Procedural History

The lengthy facts and procedure are as follows. Father married Mother in June of 1987 in Florida. The couple resided in Florida until September of 1992 when they moved to Indiana with their minor children, Heather and Kevin. On July 1, 1993, Father relocated to Texas with the children. Mother remained in Indiana until November of 1993 at which time she joined the family in Texas.

On May 25, 1994, Father and Mother separated. A dissolution action was filed in Texas. Although Father and the children stayed in Texas, Mother moved to Indiana prior to the December 16, 1994 finalization of the dissolution decree. Despite the fact that the decree awarded Father custody of the children, Father agreed to allow the children to move to Madison County, Indiana to reside with Mother on October 25, 1995. On October 27, 1995, Father moved to Florida.

On June 27, 1996, Mother filed a petition for emergency custody and modification of child custody in Madison Superior Court II ("Madison Superior"). That day, the Madison Superior Judge issued a temporary order granting Mother's petition for emergency custody. The judge also scheduled an evidentiary hearing on the matter for August 5, 1996. Father received a continuance of the August hearing.

The children continued to live with Mother until March 29, 1997 when she permitted the children to stay with Father in Florida for the remainder of the school year and for summer visitation. At that time, Mother was recovering from a hysterectomy, finding new employment, and moving to a new apartment. On July 22, 1997, Father filed a verified motion to have a Florida court enforce the Texas dissolution decree and set aside the Madison Su-

perior order granting temporary custody to Mother. That same day, the Florida court granted Father's motion ex parte. The Florida court then ordered a status investigation.

On September 16, 1997, Mother filed a motion to dismiss in the Florida court. Also, Mother's counsel sent a letter to the Madison Superior Judge indicating that the Florida judge would be contacting him. A hearing regarding Mother's motion was set to occur in Florida on October 28, 1997. At that point, Madison Superior deferred jurisdiction to the Florida court. After a hearing on the matter, the Florida court denied Mother's motion.

On or about July 31, 1998, in Florida, the parties executed a joint stipulation of permanent custody and visitation. Attached to the stipulation was a summer visitation contract.[2] The following day, the children returned to Indiana where they lived with Mother and enrolled in school. On August 6, 1998, the Florida court signed an order awarding Father permanent custody and permitting Mother visitation. On August 28, 1998, Mother filed an emergency petition for change of custody and petition for modification of custody in the Madison Circuit Court ("Madison Circuit"). Also on August 28, Father traveled to Indiana, appeared with police at the children's schools, and retrieved the children based upon the Florida order. That same day, the Madison Circuit Judge issued a temporary order granting Mother custody.

On September 15, 1998, Father filed an affidavit of children's residency and a motion to dismiss in Madison Circuit. The Madison Circuit Judge placed the jurisdictional matter on his schedule. In the meantime, Mother went to Florida, obtained the children, and returned with them to Indiana. On October 27, 1998, the Madison Circuit Judge held a hearing regarding Father's motion to enforce a for-

---

1. Codified at Indiana Code Sections 31–17–3–1 to –25.

2. Mother claims she was forced to sign the stipulation in order to see her children.

eign judgment. On November 30, 1998, the Texas court issued an order deferring custody to either Florida or Indiana. After conducting an evidentiary hearing on Father's motion to dismiss in December of 1998, the Madison Circuit Judge determined that he had jurisdiction.

### Discussion and Decision

Father's challenge to the Madison Circuit Judge's denial of his motion to dismiss is two-fold. First, he relies on Trial Rule 12(B)(8) for the following argument. Although the case was stayed in deference to the Florida court's jurisdiction, the Rios case was still pending in Madison Superior. As such, Mother should have filed her August 28, 1998 petition in Madison Superior rather than Madison Circuit.

Second, Father contends that jurisdiction was improper in Madison Circuit due to the UCCJL. Father claims that the Madison Circuit Judge incorrectly found that Indiana is the children's home state and that it had jurisdiction over the custody issues. Father·argues that Florida is the appropriate home state and notes, for support, the Madison Superior Judge's deferral of the case to Florida. We agree with both arguments.

■ As a general principle, when an action is pending before an Indiana court, other Indiana courts must defer to that court's authority over the case. *State ex. rel. Meade v. Marshall Superior Court II,* 644 N.E.2d 87, 88 (Ind.1994). Courts observe this deference in the interests of fairness to litigants, comity between and among the courts of this state, and judicial efficiency. *Id.* at 88–89. Trial Rule 12(B)(8) implements these principles by allowing dismissal of an action on the grounds that the same action is pending in another Indiana court. Thus, Trial Rule 12(B)(8) prevents two courts from concurrently entertaining the same case. *See, e.g., Farmers Nat. Bank of Remington v. Arnett,* 511 N.E.2d 510, 511 (Ind.Ct.App. 1987) (reciting well settled authority that where two courts of coordinate jurisdiction both exert authority over cases between the same parties and involving the same subject matter and issues, the jurisdiction of the court first acquiring such jurisdiction is deemed exclusive until the case is finally disposed of); *see also Crawfordsville Apt. Co. v. Key Trust Co. of Florida,* 692 N.E.2d 478, 479–80 (Ind.Ct.App.1998). In addressing this Trial Rule 12(B)(8) issue, we must examine whether the parties, subject matter, and remedies are either precisely or substantially the same. *Marshall,* 644 N.E.2d at 89.

■ Applying the aforementioned authorities here, we address whether the denial of Father's motion to dismiss resulted in two courts, Madison Superior and Madison Circuit, exercising jurisdiction over the same case. On June 27, 1996, Mother filed a petition for emergency custody and modification of child custody in Madison Superior. The Madison Superior Judge initially issued a temporary order granting Mother's petition for emergency custody. Yet, that same judge placed the following entry in the Madison Superior chronological case summary on October 28, 1997: "[c]omes now the Court and after having consulted with the Judge from Florida, this Court now defers jurisdiction to the State of Florida pending futher·[sic] Order of the Court." Record at 397. Defer has been defined as "[d]elay; put off; remand; postpone to a future time." BLACK'S LAW DICTIONARY 421 (6th ed.1990). "The term does not have, however, the meaning of abolish[.]" *Id.* As applied here, Madison Superior's deferral of jurisdiction merely delayed its jurisdiction in the matter pending further order by Madison Superior. Madison Superior did not permanently relinquish jurisdiction.

■ On August 28, 1998, Mother filed, and was granted, an emergency petition for change of custody and petition for modification of custody in Madison Circuit. This second petition involved the identical parties, subject matter, and remedies as the petition Mother filed in Madison Superior in 1996. Madison Superior, as the

court to first acquire jurisdiction, is deemed to have exclusive jurisdiction until the case is finally disposed of. *See Farmers Nat. Bank of Remington,* 511 N.E.2d at 511. While it is true that Madison Superior deferred jurisdiction to the Florida court, that action simply postponed, rather than extinguished, its jurisdiction. Consequently, it was improper for Madison Circuit to entertain jurisdiction over Mother's second petition. To reach the opposite conclusion would be to ignore the valuable interests of fairness to litigants, comity between and among the courts of this state, and judicial efficiency which are served by Trial Rule 12(B)(8).

Perhaps anticipating our conclusion that Madison Circuit did not have jurisdiction because the matter was still pending in Madison Superior, Mother requests, in the alternative, that we order Madison Superior to simply retain jurisdiction rather than allow the Florida court to determine the case. What Mother is really asking us to do is to review Madison Superior's original decision to defer jurisdiction to the Florida court. Although this argument should have been raised earlier, we will address it for clarification purposes.

 When there are interstate ramifications, the question of whether a court has jurisdiction to make a child custody determination must be made by resort to the UCCJL. *Stewart v. Stewart,* 708 N.E.2d 903, 905 (Ind.Ct.App.1999). We review a trial court's exercise of jurisdiction under the UCCJL for abuse of discretion. *Id.* The jurisdictional provision of the UCCJL states:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the *home state* of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a *significant connection* with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4)(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

IND.CODE § 31-17-3-3 (emphases added).

 Jurisdiction is established under subsection (1) only if Indiana is or has been the home state of the child. *Moore v. Miller,* 675 N.E.2d 755, 758 (Ind.Ct.App. 1997). The home state is "the state in which the child, immediately preceding the time involved, lived with his ... parent ... for at least six (6) consecutive months[.]" IND.CODE § 31-17-3-2(5). When the home

state of a child may be determined only after one parent has hidden the child from the other parent in another state for six months, there is no "home state" for purposes of determining jurisdiction under the UCCJA. *Ashburn v. Ashburn,* 661 N.E.2d 39, 42 (Ind.Ct.App.1996), *trans. denied.* The significant connection test may be applied only when the child does not have a home state. *Pryor v. Pryor,* 709 N.E.2d 374, 377 (Ind.Ct.App.1999).

∎ Prior to assuming jurisdiction under either the home state test or the significant connection test of the UCCJL, a trial court must determine if a custody proceeding in another state court is pending and whether the other court is exercising jurisdiction in substantial conformity with provisions of the UCCJL. *Hughes v. Hughes,* 665 N.E.2d 929, 932 (Ind.Ct.App. 1996). Regarding simultaneous proceedings in other states, the UCCJL states:

(a) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

(b) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under section 9 of this chapter and shall consult the child custody registry established under section 16 of this chapter concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

(c) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 19 through 22 of this chapter. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

Ind.Code § 3–1–17–3–6. The above section makes reference to "other information (a) supplied by the parties under section 9." That section requires the following:

(a) Every party in a custody proceeding, other than an action for dissolution of marriage, in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five (5) years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether:

(1) he has participated (as a party, witness, or in any other capacity) in any other litigation concerning the custody of the same child in this or any other state;

(2) he has information of any custody proceeding concerning the child pending in a court of this or any other state; and

(3) he knows of any person not a party to the proceedings who has physical custody of the child or claims to have

custody or visitation rights with respect to the child.

(b) If the declaration as to any of the above items is in the affirmative the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.

(c) Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state of which he obtained information during the proceeding.

IND.CODE § 31–17–3–9. In contrast to the mandatory "shall" language of Indiana Code Sections 31–17–3–6 and –9, the following permissive language of the inconvenient forum section provides:

(a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(b) A finding of an inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter.

(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

\* \* \*

(I) ... Upon assuming jurisdiction the court of this state shall inform the original court of this fact.

IND.CODE § 31–17–3–7.

 Despite the fact that the Texas court granted him custody, Father agreed to allow the children to move from Texas to Madison County, Indiana to reside with Mother on October 25, 1995. Father moved from Texas to Florida two days later. As such, the Texas court, which granted the divorce, lost exclusive jurisdiction on October 27, 1995. *See Cabanaw v. Cabanaw,* 648 N.E.2d 694, 698 (Ind.Ct. App.1995) (noting that under the UCCJL, a court which entered the original child

custody decree has continuing exclusive jurisdiction until the children and all the parties have left the state).

■ Mother filed her emergency custody petition in Madison Superior on June 27, 1996. We look to Indiana Code Section 31–17–3–3 to examine whether Madison Superior had jurisdiction to make a child custody modification. By the time Mother filed her emergency petition, she and the children had resided in Indiana for more than six months and the children were enrolled in school. Thus, Madison Superior arguably had jurisdiction under either the home state or significant connection test. *See* IND.CODE § 31–17–3–3(a)(1), (2); IND.CODE § 31–17–3–2(5). However, prior to assuming jurisdiction under either of these tests, Madison Superior had to determine if a custody proceeding in another state court was pending and whether the other court was exercising jurisdiction in substantial conformity with provisions of the UCCJL. *Hughes*, 665 N.E.2d at 932.

Texas was the only other state involved in the matter when Mother filed her emergency petition (which was granted the same day) in June of 1996. There is no evidence that in June of 1996, a proceeding concerning the custody of Heather and Kevin was pending in the Texas court or that the Texas court was actively exercising jurisdiction over the children's custody at that time. Therefore, Madison Superior did not abuse its discretion in exercising jurisdiction, granting Mother's emergency petition, and scheduling an August evidentiary hearing on the matter. Madison Superior then granted Father a continuance.

■ In the meantime, on March 29, 1997, Mother allowed the children to live with their Father for the rest of the school year and for the summer[3] since she was recovering from surgery, moving, and finding a new job. Father took the opportunity on July 22, 1997 to file a motion re-

questing that the Florida court enforce the Texas decree and set aside Madison Superior's order granting temporary custody to Mother. The Florida court granted Father's motion that day.

Looking again at Indiana Code Section 31–17–3–3, we examine whether the Florida court had jurisdiction over the custody dispute. In his July 22, 1997 motion, Father alleged that the children resided in Florida and that Mother had abandoned them. As such, Florida arguably had jurisdiction under Indiana Code Section 31–17–3–3(a)(3). The Florida court then had to determine, pursuant to Indiana Code Section 31–17–3–6, if a custody proceeding was pending in another court prior to assuming jurisdiction under Indiana Code Section 31–17–3–3(a)(3). Having been apprised of Madison Superior's role in the case, the judge of the Florida court contacted the Madison Superior Judge. *See* IND.CODE §§ 31–17–3–6, –7. In October of 1997, Madison Superior deferred jurisdiction. Nothing in the record suggests that the Madison Superior Court Judge's decision to defer jurisdiction was an abuse of discretion, and we note that the UCCJL expressly contemplates such communications and determinations between courts.

Although Mother and Father signed a joint stipulation on July 31, 1998 giving Father custody, the children returned the very next day to live in Indiana where Mother enrolled them in school. On August 28, 1998, Mother filed an emergency petition in Madison Circuit and Father took the children from Indiana back to Florida. By then, Florida—where the children had been living for almost seventeen months until Mother took them to Indiana—was the children's home state. Thus, the significant connection test could not be applied. *See Pryor*, 709 N.E.2d at 377 (holding that the significant connection test may be applied only when the child does not have a home state). Moreover,

---

**3.** As it turned out, the children lived with Father continuously from March 29, 1997 through July of 1998.

Mother made no allegations which would have given Madison Circuit jurisdiction under Indiana Code Section 31–17–3–3(a)(3) or (4). Thus, under the UCCJL, Madison Circuit did not have jurisdiction over this case and Madison Circuit erred in concluding otherwise. *Cf. Stevens v. Stevens*, 682 N.E.2d 1309, 1312–14 (Ind.Ct.App.1997). Assuming Madison Superior did not abuse its discretion in deferring to Florida in 1997, the Florida court still has jurisdiction.

In summary, Madison Circuit should not have denied Father's motion to dismiss as Madison Circuit did not have jurisdiction. Madison Superior still had jurisdiction, albeit deferred to the Florida court. Accordingly, the Florida court has active jurisdiction over the custody matter.

Reversed.

SULLIVAN, J., and BAILEY, J., concur.