**In re the ADOPTION OF A.N.S.**

**Jeromie William Tierney and Laura Lynn Sarrazine Tierney, Appellants–Petitioners,**

v.

**Matthew Greene, Appellee–Respondent.**

**No. 02A03–0006–CV–226.**

Court of Appeals of Indiana.

Jan. 8, 2001.

Stephen P. Rothberg, Fort Wayne, Indiana, Attorney for Appellant.

Randall J. Hammond, Tremper, Bechert, Leonard & Terrill, Fort Wayne, Indiana, Attorney for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Laura, the biological mother, and Jeromie, the prospective adoptive father, bring this interlocutory appeal in the adoption proceedings regarding A.N.S.[1] Jeromie and Laura are appealing the trial court's decision granting a motion to reconsider an earlier ruling that Matthew, the biological father of A.N.S., could not intervene in the adoption proceedings.

The appeal is moot; therefore, we dismiss.

### ISSUE

Whether a justiciable controversy exists as to paternity?

### FACTS

Laura and Matthew had a relationship. Sometime after Laura became pregnant,

---

1. On September 1, 2000, Jeromie and Laura filed a motion to strike the brief of the guardian ad litem. The motion is hereby denied.

her relationship with Matthew ended. Prior to the birth of A.N.S., on March 24, 1997, Laura gave notice to Matthew that she intended to place her unborn child for adoption. The notice, given pursuant to Ind.Code Ann. § 31–3–1–6.4 (repealed and reenacted as Ind.Code § 31–19–3–4), explained, inter alia, that in order to contest an adoption: 1) a putative father must file a paternity action to establish a relationship with the unborn child, 2) a putative father must commence an action within thirty days of receipt of the notice, 3) a putative father's failure to commence an action within the prescribed period results in the putative father's irrevocable consent to the adoption. Affidavits affirmed that notice was served upon Matthew on March 24, 1997.

On April 14, 1997, Matthew notified Laura by a letter that he intended to contest the adoption. A.N.S. was born April 21, 1997. On May 1, 1997, thirty-eight days after he received the notice of the intended adoption, Matthew filed an action in Allen Superior Court (hereinafter, the "paternity court") to establish paternity of A.N.S.

On May 27, 1997, Laura moved for summary judgment in the paternity action. She alleged that Matthew's failure to file his paternity action within thirty days of the notice required dismissal of his paternity action. In July 1997, Matthew registered with the Putative Father Registry. On October 20, 1997, the paternity court denied Laura's motion for summary judgment and ordered paternity testing to proceed as requested by the guardian ad litem.

In the meanwhile, Laura and Jeromie were married on November 8, 1997. On November 10, 1997, they filed their petition in a different Allen Superior Court (hereinafter, the "adoption court") in which Jeromie sought to adopt A.N.S. and Laura gave her consent to the adoption. Within the adoption petition, Laura and Jeromie[2] alleged that Matthew failed to comply with the provisions of the notice statute, that Matthew's separate action to establish paternity filed thirty-eight days after the notice was not timely, and that Matthew irrevocably consented to the adoption. The adoption petition averred that the pending paternity action "was not in compliance with" the notice statute. (R. 12).

On February 2, 1998, Matthew filed a motion to intervene in the adoption proceedings, a motion for a continuance, and a motion for the appointment of a guardian ad litem. On the same day the adoption court granted the motion to appoint a guardian ad litem. Also, the adoption court entered an order stating, in pertinent part:

> The Court finds that the putative father failed to comply with the statute within the thirty (30) days and that [his] consent to the adoption is irrevocably implied. Having so consented, the Motion to Intervene is denied, the Motion for Continuance is denied.
>
> The Court now appoints Karen Richards as guardian ad litem in this cause.

(R. 50). On March 9, 1998, thirty-five days after the adoption court's ruling, Matthew filed a motion to correct error. The adoption court held a hearing on the motion in May 1998.

On May 14, 1998, the guardian ad litem filed, in the adoption court, a motion for a stay of the proceedings. The motion averred that the paternity action was filed prior to the adoption proceedings, that a final hearing on paternity would be held in June 1998, that Matthew filed a motion to correct error as to the ruling on his request to intervene in the adoption proceedings, and that a stay would preserve the status quo because the child was living with her mother and prospective adoptive father.

---

2. Although prospective adoptive parents may intervene in paternity actions, *see* IND.CODE § 31–14–21–8, there is no indication that Jeromie appeared as a party in the paternity proceedings.

On May 27, 1998, the adoption court entered an order stating, in pertinent part:

There is pending before the Court a Motion to Correct Error filed by the Respondent and a Motion to Stay the Proceedings, filed by the guardian ad litem.

Arguments are submitted on the issue of the timeliness of the filing of the Motion to Correct Error. The matter was taken under advisement.

The Court, after study and deliberation now finds that; the Motion to Correct Error was filed more than thirty (30) days after the entry by the Court finding that the father's consent was not required in this present cause; the Court also finds that the finding of the Court on February 2, 1998 was not a final appealable order, it is not dispositive of the case and therefore, the Motion to Correct Error was prematurely filed. Further, the Court finds that the Court made no error in the ruling and order of February 2, 1998.

The Court considers the Motion for Stay of Proceedings filed by the guardian ad litem. The motion is denied.

The Court finds that this cause is not yet ready for final hearing. There has been no submission of the return from the putative father registry nor a report from Lutheran Social Services.

(R. 160).

In June 1998, the paternity court granted petitions by Matthew and the guardian ad litem to establish Matthew as A.N.S.'s biological father. The paternity court entered an order requiring Matthew to pay child support, granting Laura physical custody of A.N.S., and allowing Matthew visitation with A.N.S.[3]

In February 1999, the guardian ad litem filed motions in the paternity court and the adoption court to consolidate the proceedings in the paternity court. She requested consolidation in the paternity court because the paternity court had heard evidence on the matters and had entered the orders for paternity, custody, support, and visitation. The guardian ad litem noted that consolidation would avoid the possibility of inconsistent judgments.[4]

In September 1999, the adoption court requested reassignment of the adoption matter to another court. Laura and Jeromie filed their motion to exclude nonparties, including Matthew, from the final hearing on the adoption. On December 15, 1999, the new adoption court denied the motion and stated: "Based upon the Respondent's representation that he intends to file a motion to reconsider the court's ruling on implied consent, the Pre Trial Conference is ordered reset." (R. 197).

On January 27, 2000, Matthew filed his motion to reconsider the February 2, 1998 ruling regarding his implied consent to the adoption of A.N.S. After a hearing, the trial court entered an order on April 27, 2000 that granted the motion to reconsider. The adoption court concluded that the irrevocable consent was inequitable based upon Matthew's eight-day delay in filing his paternity action. In a comparative analysis, the adoption court viewed Matthew's eight-day delay as inconsequential when weighed against the fact that Laura and Jeromie did not file their adoption petition for several months after the paternity petition was filed.

The CCS in the adoption proceedings reveals the following notation based upon Laura and Jeromie's request for certification of an interlocutory appeal:

The court finds that ... the factual circumstances of this case are such that

---

3. According to the record of proceedings, although not complete as to the paternity action, no appeal was taken by Laura and Jeromie from the paternity court's order that established paternity, custody, support, and visitation.

4. The Chronological Case Summary (CCS) in the adoption proceedings does not reflect a ruling on the motion to consolidate.

absent the consent of the father, as the court's findings now stand, [Laura and Jeromie] are precluded from proceeding to a final adoption hearing. The court further finds that the court's orders involve a substantial question of law, and, given the involvement of a child, require an early disposition. The requirements of 4(B)6 are thus met, and the court now certifies this case for appeal.

(R. 7).

## DECISION

■ Laura and Jeromie contend that the adoption court erred by granting Matthew's motion to reconsider because Matthew's consent to the adoption of A.N.S. was irrevocably established by operation of the notice statute. Matthew urges that strict adherence to the statutory provisions is not required because Laura and Jeromie were not married at the time the notice regarding the rights and obligations of a putative father was issued, and because "the public policy of promoting and favoring establishing paternity in the natural parent of a child outweighs a strict interpretation of a pre-birth notice provision which jeopardizes that basic right." Matthew's Brief at 7.

However, we do not reach the arguments of the parties. The record and the order certifying the cause for interlocutory appeal reveal an impediment to our review of the order in the adoption proceedings with regard to Matthew's ability to establish paternity. Analysis of the relevant statutory framework and common law leads us to conclude that the paternity court's order establishing paternity in Matthew renders this appeal moot.

Laura and Jeromie's interlocutory appeal from the adoption proceedings centers on the question whether Matthew filed his paternity action in a timely manner. The adoption court's order certifying the cause for interlocutory appeal alludes to the fact that Matthew's paternity has been established; thus, the adoption proceedings cannot move forward without Matthew's con-

sent. The paternity action, filed prior to the adoption proceedings, has concluded in a determination of the paternity issue.

We conclude that the paternity court's judgment, even if not technically correct pursuant to the notice statute, was a final appealable order that forecloses relitigation of Matthew's paternity through a collateral attack in the adoption proceedings. We will address separately each step that leads to our conclusion.

■ Initially, we will address the paternity and adoption courts' jurisdiction. The adoption statutes contemplate concurrent jurisdiction by paternity and adoption courts. *See* IND.CODE §§ 31–14–21–1 through 31–14–21–9.2 (setting out requirements in a paternity action when an adoption is pending). "When two or more courts have concurrent jurisdiction over the same case, 'the jurisdiction of the court first acquiring such jurisdiction is deemed exclusive until the case is finally disposed of on appeal or otherwise.'" *Pivarnik v. N. Indiana Public Serv. Co.*, 636 N.E.2d 131, 135 (Ind.1994) (quoting *State ex rel. Int'l Harvester Co. v. Allen Circuit Court*, 265 Ind. 175, 352 N.E.2d 487, 489 (1976)).

■ Both the paternity action and the adoption proceedings were filed in Allen Superior Court; thus, the courts enjoy concurrent jurisdiction. *Cf. Matter of Adoption of T.B.*, 622 N.E.2d 921, 924 (Ind.1993) (Lake County circuit court and superior court had concurrent jurisdiction). Here the paternity action was filed first. However, when an adoption and paternity action are both pending, paternity necessarily must be determined prior to completion of the adoption proceedings. *See* IND. CODE §§ 31–14–21–1 through 31–14–21–9.2, and IND.CODE §§ 31–19–1–1 *et seq.* (if a putative father is adjudicated as a parent, he must consent, have his rights terminated, or meet some other criteria, for an adoption to proceed).

■ Next, we conclude that the paternity court entered a final, appealable judg-

ment. A final judgment is one that finally disposes of the subject matter of the litigation as to the parties and to the extent that the court in which the action is pending has the power to dispose of it. *In re Guardianship of Shaffer*, 711 N.E.2d 37 (Ind.Ct.App.1999), *trans. denied.*

As noted in the facts, Laura[5] fully participated in the proceedings in paternity court. She filed her motion for summary judgment asking the paternity court to recognize that Matthew failed to file his paternity action within the prescribed 30 day period. The paternity court denied the motion, and the paternity proceedings continued. In June 1998, when Matthew was adjudicated the father of A.N.S., he was awarded visitation and a retroactive support order was entered. Laura was awarded custody of A.N.S. Laura did not appeal those determinations.

The paternity court was asked to establish or reject paternity and to determine any support and visitation issues, relative to the parties and A.N.S. The paternity court made those determinations and entered an order that was final as to the parties and the issues involved.[6]

Next, we address the efficacy of the paternity court's judgment. Assuming arguendo that the paternity court erred by rejecting Laura's argument in which she alleged that Matthew's petition to establish paternity was not timely and by entering an order adjudicating Matthew as the biological father of A.N.S., Laura was required to challenge the final order through a motion to correct error, an appeal, or in some manner. She could not ignore the

finality of the order and later turn to the adoption court to mount a collateral attack on the paternity court's judgment by relitigating paternity. Although abiding by the custody, support, and visitation provisions of the paternity court's order, Laura and Jeromie's continued action in the adoption proceedings presupposes that the judgment as to paternity is a nullity.

In *Stidham v. Whelchel*, 698 N.E.2d 1152, 1154 (Ind.1998), our supreme court distinguished a "void" judgment from one that is merely "voidable." The court stated:

> The distinction between a void and voidable judgment is no mere semantic quibble. "A void judgment is one that, from its inception, is a complete nullity and without legal effect. . . ." 46 AM. JUR.2D *Judgments* § 31 (1994). By contrast, a voidable judgment "is not a nullity, and is capable of confirmation or ratification. Until superseded, reversed or vacated it is binding, enforceable, and has all the ordinary attributes and consequences of a valid judgment." 46 AM. JUR.2D *Judgments* § 30 (1994).

*Id.* The court in *Stidham* determined that a paternity adjudication by a default judgment could be attacked seventeen years later where personal jurisdiction was not acquired over the defaulted party. The lack of personal jurisdiction rendered the judgment "void." *Id.*

Here, the parties fully adjudicated the paternity issue in the paternity court. The paternity court may have entered a judgment that did not comport with the notice

---

**5.** We note again that Jeromie could have intervened in the paternity action pursuant to statute. *See* IND.CODE § 31–14–21–8. Moreover, Jeromie is bound by the decision of the paternity court. The intervention statute specifically allows a prospective adoptive parent to "object to any error that occurs during the paternity proceedings." *Id.* Jeromie could not sit by idly during the paternity proceedings and allow a judgment of paternity to be entered and later attempt to contest the paternity determination in the adoption court. As noted below, the issue of paternity is absolute.

No other person can establish paternity as to A.N.S.

**6.** The paternity court finally disposed of all matters brought before it by the parties, but retains jurisdiction to the extent the judgment demands, *e.g.*, the court could modify custody, child support, and visitation. *See Waas v. Illinois Farmers Ins. Co.*, 722 N.E.2d 861, 862 (Ind.Ct.App.2000) (final judgment allows issuing court to retain only such continuing jurisdiction as permitted by judgment, statute, or rule).

statute under the circumstances; however, any error in the determination does not render the judgment a nullity. The paternity court judgment, even if in error, could not be ignored. The judgment has not been superseded, reversed, or vacated and is, therefore, a binding and enforceable judgment. As such, Laura and Jeromie's attempt to appeal the adoption court's recognition of the paternity determination amounts to a collateral attack on the paternity court's decision within the adoption proceedings.

Next, we turn to the propriety of collateral attacks on valid judgments. The decision in *State ex rel. Meade v. Marshall Superior Court II*, 644 N.E.2d 87 (Ind. 1994), is instructive with regard to the deference one state court extends to the decisions and the jurisdiction of another state court. In *State ex rel. Meade*, the Marshall Circuit Court granted a dissolution, and made child support and custody determinations. Later, the new spouse of the custodial spouse filed an action in Marshall Superior Court requesting a protective order that limited the times and places the noncustodial spouse could contact or visit the children. A temporary protective order was granted by the Superior Court. In dissolving the temporary protective order and issuing a permanent writ to the Superior Court to relinquish jurisdiction, the court stated:

> When an action is pending before a court of competent jurisdiction, other courts must defer to that court's extant authority over the case. Courts observe this deference in the interests of fairness to litigants, comity between and among the courts of this state, and judicial efficiency. This principle is implemented by Trial Rule 12(B)(2), which allows a party to move for dismissal on the grounds that the same action is pending in another Indiana court. This rule applies where the parties, subject matter, and remedies of the competing actions are precisely the same, and it also applies when they are only substantially the same.

*Id.* at 88–89 (citations omitted); *see also Rios v. Rios*, 717 N.E.2d 187, 190 (Ind.Ct. App.1999). Of particular relevance to the present case, the court also explained that parties may not circumvent statutes and judgments through collateral attacks in different courts. *State ex rel. Meade v. Marshall Superior Court II*, 644 N.E.2d at 89.[7]

Deference and the prohibition against collateral attacks on a court's judgment will not permit the parties to relitigate, in the adoption court, the valid and enforceable judgment of the paternity court on substantially the same issue—paternity.

We also note that tenets of res judicata proscribe the relitigation of the paternity court's determination on paternity. Res judicata will prevent the repetitious litigation of disputes which are essentially the same. *Wagle v. Henry*, 679 N.E.2d 1002, 1005 (Ind.Ct.App.1997). In *Biggs v. Marsh*, 446 N.E.2d 977, 981 (Ind. Ct.App.1983), we explained the branches of res judicata:

> Res judicata is generally described as consisting of two branches, claim preclusion and issue preclusion. When claim preclusion applies every question which was within the issues and might have been proved will be presumed to have been litigated and no further action between the parties, or their privies, will be permitted as to any such issue.
>
> Issue preclusion arises where the claims are not the same, but some fact or question has been determined in the former suit and is again put in issue in a subsequent suit between the same parties or their privies. In such cases the

---

7. Unlike the circumstances in *State ex rel. Meade,* the circumstances here do not reveal a purposeful attempt to circumvent a valid order in another court. As noted above, the adoption statutes recognize that the paternity action and adoption proceedings may be pending simultaneously. Also, as noted above, at one point the guardian ad litem attempted to bring the adoption and paternity matters together in one proceeding in order to prevent inconsistent judgments.

former adjudication of that fact, if properly presented and relied upon, will be conclusive on the parties.

In claim preclusion, where the other requirements are met, the critical question is whether the present claim was within the issues of the first; whether the claim represents an attempt to split a cause of action (or defense). It has generally been said that the test for making this determination is whether identical evidence will support the issues involved in both actions.

*Id.* (citations omitted).

Laura and Jeromie cannot split their cause of action, or the defense to Matthew's cause of action, and ignore the paternity court ruling that finally determined Matthew's paternity. That all the parties are bound as to the paternity determination cannot be questioned. Once the paternity of A.N.S. was established, subject to reversal on appeal, the issue of paternity became final as to the parties and all others. No other person could establish paternity as to A.N.S.

Therefore, Laura and Jeromie's appeal from the adoption proceedings, with regard to Matthew's ability to establish paternity, is moot. In *George S. May Int'l. Co. v. King*, 629 N.E.2d 257, 259 (Ind.Ct. App.1994), this court stated:

> An appeal is moot and this court lacks jurisdiction when: (1) it is no longer live or when the parties lack a legally cognizable interest in the outcome, (2) the principal questions in issue are no longer matters of real controversy between the parties, or (3) the appeals court is unable to provide effective relief upon the issue.

*Id.* (citation omitted). Here, the principle question has been answered, and we cannot provide effective relief upon the issue.

The appeal is dismissed.

RILEY, J., and ROBB, J., concur.