711 N.E.2d 37 (1999)
In the Matter of the GUARDIANSHIP OF Virgil Earl SHAFFER, An Adult,
Kim D. Shaffer, Appellant-Petitioner,
v.
Mary Lou Williams and Jacqueline Lung, Appellees-Respondents.
No. 20A03-9601-CV-14.
Court of Appeals of Indiana.
May 13, 1999.
*39 Debra Voltz-Miller, Fred R. Hains & Associates, South Bend, Indiana, for appellant.
Denise C. Davis, Yoder, Ainlay, Ulmer & Buckingham, Goshen, Indiana, for appellees.

*38 OPINION
KIRSCH, J.
This is a consolidated appeal of orders entered in a guardianship action by the Elkhart Superior Court and later, on transfer, by the Kosciusko Circuit Court. Mary Lou Williams and Jacqueline Lung appeal the Elkhart court's finding that they failed to act in good faith in their capacity as attorneys-in-fact. Kim Shaffer appeals the Kosciusko court's order ratifying actions taken by Williams and Lung and granting their attorney fee petition. The consolidated appeal presents four issues:[1]
I. Whether the Elkhart trial court abused its discretion by finding that the attorneys-in-fact failed to act in good faith;
II. Whether the Kosciusko trial court abused its discretion by ratifying the actions of the attorneys-in-fact in view of the Elkhart court's finding that the attorneys-in-fact failed to act in good faith;
III. Whether the Kosciusko trial court abused its discretion by granting the fee petition submitted by the attorneys-in-fact;
IV. Whether the Kosciusko trial court erred by holding Shaffer personally liable for the fees of the attorneys-in-fact.
We affirm on issues I through III, and reverse on issue IV.

FACTS AND PROCEDURAL HISTORY
This appeal arises from a family dispute among the relatives of Earl Shaffer, an elderly man afflicted with Alzheimer's disease. On one side of the dispute are Earl's stepdaughters, Mary Lou and Jacqueline, whom Earl named as his attorneys-in-fact in 1993. On the other side is Earl's granddaughter, Kim. Kim and her father (Earl's son) were displeased with some of the actions taken by the attorneys-in-fact, particularly the sale of a lake cottage Earl had promised to Kim's father. Accordingly, Kim and her father petitioned the Elkhart Superior Court to appoint them as Earl's guardians.[2] The attorneys-in-fact opposed the petition. The Elkhart judge granted the guardianship petition and determined that the power of attorney appointing the attorneys-in-fact was invalid. Record at 100. The judge also found that the attorneys-in-fact failed to act in good faith in selling the lake cottage. Record at 200. The judge ordered the attorneys-in-fact to file an accounting and inventory for all of Earl's property.
The attorneys-in-fact filed the requisite accounting and inventory, including a request for attorney fees. The guardian (Kim) filed objections to the accounting and to the fee request. The Elkhart judge held a hearing on the objections, then determined that the matter presented legal issues requiring further analysis. After making that determination, the Elkhart judge recused and transferred the case to the Kosciusko Circuit Court (referred to herein as the second judge).
The second judge requested that the parties submit an Agreed Statement of Facts to educate him on the prior proceedings. In the Agreed Statement, the parties identified the legal issue before the court as: "when a power of attorney is subsequently declared invalid, what is the status of actions taken by the named attorneys in fact under the document." Supp. Record at 14. After reviewing the Agreed Statement the second judge entered an order ratifying all of the actions of the attorneys-in-fact. Supp. Record at 49. The order did not address the attorneys-in-facts' *40 accounting or their request for attorney fees.
During these proceedings, Earl died. The guardian accordingly petitioned for termination of the guardianship, including a request that Earl's estate pay her attorney fees and pay a guardian fee to her. The second judge approved her requests and entered a final order terminating the guardianship. The judge also approved the inventory and accounting of the attorneys-in-fact, and approved their request for attorney fees. In addition, the judge ordered that in the event the estate did not pay the fees of the attorneys-in-fact, the guardian would be held personally liable for those fees.
On appeal, the guardian claims that the second judge erred in ratifying the actions of the attorneys-in-fact and in approving their attorney fees. In the cross-appeal, the attorneys-in-fact claim that the Elkhart judge (referred to herein as the first judge) erred in finding that they failed to act in good faith.

DISCUSSION AND DECISION

I. Ratification Order and Good Faith of Attorneys-in-Fact
The parties' dispute concerning the conduct of the attorneys-in-fact centers on Finding No. 11 in the first judge's order. The finding, which is part of the order granting the guardianship petition, states:
"11. That [the attorneys-in-fact] had failed to act in good faith while exercising the power purportedly granted under the durable power of attorney, in that they knew that upon the death of Virgil Earl Shaffer the lake cottage was to go to Donald Earl Shaffer and at the time the cottage was sold they did not need the money for the upkeep of Virgil Earl Shaffer but nevertheless sold the cottage and placed the proceeds in the name of Virgil Earl Shaffer, payable on his death to Donald Earl Shaffer. That these acts were contrary to Virgil Earl Shaffer's intent that the cottage should go to his Son, Donald Earl Shaffer, and were committed at a time when Virgil Earl Shaffer was not competent to make his own decision about selling the lake cottage."
Record at 200.[3]
The guardian contends that the second judge's order ratifying the actions of the attorneys-in-fact is in direct conflict with Finding No. 11, and that as such the second judge's order must be reversed. In response, the attorneys-in-fact claim that Finding No. 11 is erroneous and that the first judge's order must be reversed.
We find no conflict between the two judges' orders, because Finding No. 11 was not central to the Elkhart judge's order. Nothing in the order or in the guardianship petition required or requested a finding concerning the good faith of the attorneys-in-fact. Rather, the petition required resolution of only two issues: whether the power of attorney was valid and if not, whether a guardianship was necessary. The judgment on the petition contained only three enforceable orders: that the power of attorney be invalidated, that Kim be appointed as Earl's guardian, and that the attorneys-in-fact be required to render an accounting. None of these orders turned on Finding No. 11. Instead, the orders turned on the first judge's finding that Earl was incompetent at the time he signed the power of attorney. Once the judge determined that Earl was incompetent at the time he signed the power, the first judge properly determined that the power was invalid. Having deemed the power of attorney invalid, the judge properly determined that a guardianship was the necessary legal mechanism to manage Earl's affairs. The judge's finding that the attorneys-in-fact failed to act in good faith was thus surplusage and had no preclusive effect on matters later addressed by the second judge. See Kahn v. Cundiff, 533 N.E.2d 164, 166 (Ind.Ct.App.1989) aff'd 543 N.E.2d 627 (Ind.1989) (findings that are irrelevant to trial court's legal conclusion are harmless error).
*41 Even if, as the guardian suggests, the first judge intended that Finding No. 11 form the basis of some liability imposed upon the attorneys-in-fact, the second judge would have been within his authority to alter the finding. A trial court has inherent power to reconsider, vacate or modify any previous order so long as the court has not entered final judgment. Hubbard v. Hubbard, 690 N.E.2d 1219, 1221 (Ind.Ct.App.1998). A final judgment disposes of the subject matter of litigation as to the parties so far as the court in which the action is pending has the power to dispose of it. Id. (citing Matter of J.L.V., Jr., 667 N.E.2d 186, 188 (Ind.Ct.App.1996)). Here, the first judge had not entered a final judgment on the attorneys-in-facts' accountings or on any potential liability to Earl's estate. Had the first judge disposed of these issues regarding the attorneys-in-fact, there would have been no need to pursue the issues with the second judge. Accordingly, the first judge's Finding No. 11 was not binding on the second judge, and the finding presents no conflict with the second judge's order.[4]

II. Attorney Fees

A. Fees of Attorneys-in-fact
The guardian challenges the second judge's decision ordering that the estate pay the attorney fees of the attorneys-in-fact. According to the guardian, the attorneys-in-facts' opposition to the guardianship petition was not beneficial to Earl and thus did not warrant an attorney fee award.
The attorneys-in-fact respond that they are entitled to attorney fees because they were defending the validity of the power of attorney. They maintain that the guardianship petition presented complex matters of serious import, and that as such they are entitled to fees regardless of the outcome of the petition.
A trial court has discretion to grant or deny an attorney fee petition, and we cannot reverse the trial court's decision absent a showing that the fee award was an abuse of discretion. Malachowski, 682 N.E.2d at 532. When ruling on an attorney fee petition, the trial court must consider not only the outcome of the proceedings, but also the following factors: (1) whether the parties acted reasonably and in good faith in incurring the fees, (2) whether the facts were in dispute, (3) whether the legal issues were complex, and (4) whether any party's misconduct caused the proceedings. Id. at 533, quoting Zaring v. Zaring, 219 Ind. 514, 523, 39 N.E.2d 734, 737 (1942) and Haas v. Wishmier's Estate, 99 Ind.App. 31, 190 N.E. 548 (1934). A trial court may not award fees to a party whose misconduct necessitated the proceedings. Id.
Application of these factors to the award at issue here demonstrates that the award was not an abuse of discretion. First, the decision of the attorneys-in-fact to oppose the guardianship was reasonable, because the Power of Attorney statute authorizes them to defend their power. According to the statute, a power of attorney is valid until revoked in writing and the power continues even after incapacity of the principal. IC XX-X-XX-X, -3. In addition, the statute authorizes an attorney-in-fact to obtain reimbursement of reasonable expenses advanced on behalf of the principal. IC 30-5-4-5. The statute also provides that once a power of attorney is created, no guardianship can be imposed with regard to matters that are subject to the power. IC 30-5-3-4. Further, if a guardian is appointed, the guardian cannot revoke a power of attorney. Id. Given these provisions, the guardian could not prevail on the guardianship petition unless she could demonstrate that the existing power of attorney was invalid. The petition thus presented the attorneys-in-fact with an ultimatum: resign as attorneys-in-fact or defend the power of attorney.[5] The attorneys-in-fact reasonably opted to defend the power.
*42 Second, the Record contains no evidence that the attorneys-in-facts' decision to defend was unreasonable or in bad faith. In this regard, this case is distinguishable from Malachowski, which guardian cites in support of her appeal. In Malachowski, our supreme court affirmed a denial of fees due to misconduct by a party. The court noted that the majority of the trial court's order focused on the party's misconduct, and further noted that the misconduct had necessitated the lawsuit. Id. at 533-34. Here, in contrast, only one finding addressed misconduct by the attorneys-in-fact. Nothing in either court's order indicated that the misconduct (concerning the sale of the lake cottage) necessitated the guardianship proceedings or the subsequent accounting and inventory.
The remaining factors also support the attorney fee award with regard to fees incurred in opposing the guardianship. Although the defense of the power presented no complex legal issue, it did require extensive evidence on a factual issue, i.e., whether Earl was competent at the time he signed the power. The necessity for factual investigation and for hearing preparation, combined with the legitimate decision to defend the power of attorney, supports the trial court's decision to grant the attorney fee petition for fees incurred in opposing the guardianship.

B. Personal Liability of Guardian for Fees
The guardian argues that the trial court erred in ordering that the attorney fee award be a lien upon her personal assets in the event the estate could not pay the award. We agree. As the guardian points out, there is no statutory authority for the imposition of personal liability for attorney fees, nor did the trial court provide an explanation for the imposition of such liability.
The attorneys-in-fact argue that the imposition of personal liability is warranted because the guardian did not post a bond as required by IC 29-3-7-1. This argument misconstrues the purpose of the bonding requirement. The requirement is designed to protect the ward and the ward's beneficiaries from damages attributable to a guardian's failure to fulfill the duties of the guardianship. Nothing in the attorney fee award here implies that the guardian failed to fulfill her duties. To the contrary, the Record indicates that the guardian zealously pursued matters she reasonably deemed significant to the ward. As such, there is no basis for invoking the bond (or lack thereof) as a basis for imposing personal liability.
Accordingly, we hold that the Kosciusko court erred in imposing personal liability upon the guardian for payment of the attorney fees incurred by the attorneys-in-fact. In all other respects, the orders of the Elkhart and Kosciusko courts are affirmed.
Affirmed in part and reversed in part.
GARRARD and NAJAM, JJ., concur.
NOTES
[1] The guardian presents an additional issue in her brief: "What recourse is available to a principal for acts taken under an invalid power of attorney?" Appellant's Brief at 1. We do not address this issue, because we affirm the order ratifying the actions of the attorneys-in-fact. Given the affirmance, the issue of recourse is moot.
[2] Kim's father subsequently died; Kim proceeded alone.
[3] The original order included a broad finding that the attorneys-in-fact had not acted in good faith. Record at 98. The judge later amended the original order specifying the faulty acts. Record at 200.
[4] The guardian's arguments on appeal are based on her claim that the two judges' orders conflict; she presents no challenge to the sufficiency of the evidence for the second judge's ratification order. As such, we do not consider whether the second judge's order was supported by the evidence or was otherwise appropriately entered.
[5] According to the Indiana statutes, an attorney-in-fact is not required to exercise the power granted in a power of attorney. Thus, the attorneys-in-fact here could have resigned.