908 N.E.2d 360 (2009)
In re the GUARDIANSHIP OF L.R., an adult,
B.R., Appellant-Respondent,
v.
Irma Hampton (Nave) Stewart, John W. Longnaker, III, and First Merchants Trust, as Guardian of the Estate of L.R., Appellees-Petitioners.
No. 48A04-0812-CV-0744.
Court of Appeals of Indiana.
June 25, 2009.
*362 Curtis E. Shirley, Indianapolis, IN, Attorney for Appellant.
David W. Stone, IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellees.

OPINION
BAKER, Chief Judge.
This appeal presents a tangled knot of multiple trial court orders and multiple notices of appeal. But when the knot is untangled and the vituperative language used by the appellant's attorney is removed from the snarl of issues, the correct outcome is apparent. The motions panel properly dismissed the first two notices of appealone for being untimely and the other for being an appeal from a non-appealable orderand the trial court properly granted the requested attorney and administrative fees at issue in the third appeal.
Appellant-respondent B.R. (Daughter) appeals three orders entered by the trial court relating to attorney fee petitions filed by appellees-petitioners Irma Hampton Stewart, John W. Longnaker, III, and First Merchants Trust, as Guardian of the Estate of L.R. (collectively, the appellees). In the third appeal, Daughter argues that the trial court erred by awarding the appellees' requested administrative and appellate attorney fees. Finding no error, we affirm.

FACTS
Daughter, who lives in Florida, is the only child of L.R. (Mother), who lives in Anderson. In 1996, Mother appointed Daughter to be her attorney-in-fact, giving Daughter her financial and healthcare powers of attorney. Should Daughter survive Mother, she is the sole beneficiary of her Mother's will and trust.
Sometime in 2006, Daughter became concerned about Mother's mental fitness, and on July 5, 2006, Daughter filed a petition for guardianship of Mother. On July 21, 2006, Stewart appeared on Mother's behalf to contest the petition.
On August 7, 2006, Mother executed a revocation of Daughter's power of attorney. On August 15, 2006, Daughter objected to that revocation and requested an injunction preventing anyone from altering Mother's estate documents. Mother's attorney responded, explaining that Daughter had allegedly taken control of Mother's bank accounts, that Daughter's name appeared on those accounts, and that the address on the accounts had been changed to Daughter's Florida address. Mother's attorney requested an injunction preventing Daughter from taking or redirecting anymore of Mother's funds. On September 18, 2006, the trial court held a hearing and subsequently entered an injunction preventing the alteration of Mother's estate documents and preventing anyone from removing money from Mother's accounts. The trial court has never explicitly ruled on the issue of the revocation.
Following a hearing, on September 7, 2007, the trial court granted Daughter's petition, finding, in part, as follows:
10. [Mother] recognized her signature but did not recall signing any of the legal documents placed in front of her. [Mother] did not recall signing her Will, her Trust, general durable power of attorney, health care representative form, or living will. While the guardianship case was pending [Mother] apparently *363 signed a revocation of her power of attorney, but did not remember.
11. At the beginning of [Mother's] testimony she recited facts from handwritten notes. These involved important dates, the medications she took, and where she banked. Shortly after this testimony, without her notes, [Mother] could not recall any of the information. [Mother] does not know how much or what she owns. She has very little understanding of the nature and extent of her property. A few years ago [Mother] had cancer surgery. At trial [Mother] thought the surgery involved a hernia. [Mother] could not recall the name of the President of the United States or Governor of Indiana. [Mother] could not recall the current day of the week, the month, or the date.
12. The Court finds that [Mother] lacks the mental capacity required to handle the financial affairs requisite to the management of the large estate which she possesses, and that she is at risk of being taken advantage of financially.
13. The Court finds that [Mother] is in need of a guardian, both personally and for her estate.
14. Two factors dissuade the Court from appointing [Daughter] as Guardian ... the animosity of [Mother] and her residence in Florida.
Appellant's App. p. 45. The trial court eventually appointed Ardeth Wilson as guardian of Mother's person, and appellee-petitioner First Merchants Trust (Guardian) as guardian of Mother's estate. On December 7, 2007, Daughter filed a petition for attorney fees in the amount of $52,965 and expenses of $2,373, with her attorney charging an hourly rate of $550. Following a hearing, the trial court granted the petition in part, finding that a reasonable hourly rate for Madison County is $250 and that a number of claimed fees and expenses were unreasonable, ultimately awarding attorney fees of $18,250 and no expenses.
On July 16, 2008, the Guardian filed a petition seeking Stewart's attorney fees in the amount of $4,902 and the fees of Longnakerthe Guardian's attorneyin the amount of $5,900. On August 19, 2008, the trial court entered an order (the First Order) granting the petition over Daughter's objections. On September 16, 2008, Daughter filed a motion to correct error that the trial court neither set for hearing nor ruled upon. On November 25, 2008, Daughter filed a notice of appeal (the First Notice) from the First Order. Appellate briefing commenced.
Meanwhile, on January 8, 2009, the Guardian filed a petition seeking permission to hire co-counsel to represent the Guardian on appeal: "The [Guardian may] hire as Co-Counsel, David Stone for the hourly rate of $190.00, for the limited purpose of representing the [G]uardian in the said appeal; however, before payment of the fees of David W. Stone IV, the Guardian shall submit them for Court approval." Appellant's Supp.App. p. 17. Daughter subsequently requested that the trial court reconsider its order and the Guardian requested that the trial court clarify its order. On February 27, 2009, the trial court entered a clarification of its order (the Second Order), ordering "that the scope of David W. Stone IV's representation includes the defense of the attorney fees awarded to both [Longnaker] and [Stewart], and all related issues raised by the appeal therefrom." Id. at 28.
On March 5, 2009, Daughter filed a notice appeal (the Second Notice) from the *364 Second Order. On April 3, 2009, the motions panel of this court ordered that the First and Second Notices be consolidated. The motions panel further ordered that the parties submit supplemental briefs on the issues presented by the Second Notice.
Meanwhile, on April 2, 2009, the Guardian filed a petition in the trial court seeking Stone's appellate attorney fees in the amount of $4,833.67. The same day, the Guardian filed a petition to approve interim accounting in which the Guardian requested administrative fees totaling $4,029.83. On April 7, 2009, the trial court granted the petition for appellate attorney fees and petition for interim accounting without a hearing (the Third and Fourth Orders, respectively). On April 9, 2009, Daughter filed a notice of appeal (the Third Notice) from the Third and Fourth Orders.
On April 10, 2009, the appellees moved to dismiss the appeal, arguing that the First Notice was untimely and the Second Notice related to a non-appealable order.[1] On April 28, 2009, the motions panel of this court entered an order dismissing the First and Second Notices without prejudice to Daughter's right to appeal those claims after the trial court enters a final, appealable judgment. The motions panel further ordered that the issues raised by the Third Notice would be considered by the writing panel.
On April 29, 2009, Daughter filed a motion to reconsider the dismissal order, arguing that the Third Order is an interlocutory order that is appealable as of right and that it incorporated the claims raised by the First and Second Notices. On May 26, 2009, the motions panel held Daughter's motion to reconsider in abeyance for the writing panel. Therefore, we will consider herein the following issues: (1) whether the motions panel properly dismissed the First and Second Notices; and (2) whether Daughter has standing to raise the claims included in the Third Notice.

DISCUSSION AND DECISION

I. The First Notice
The First Order was entered on August 19, 2008, and Daughter did not file the First Notice until November 25, 2008, over three months later. The First Order was an interlocutory order for the payment of money. Consequently, Indiana Appellate Rule 14(A) specifies that Daughter was required to file the First Notice within thirty days of the entry of the First Order. That she filed a motion to correct error in the meantime did not extend the thirty-day filing deadline. See Young v. Estate of Sweeney, 808 N.E.2d 1217, 1221 n. 6 (Ind.Ct.App.2004) (concluding that motions to correct error are improper following an interlocutory order; consequently, such motions do not extend the thirty-day deadline for filing a notice of appeal). Therefore, the motions panel properly dismissed the First Notice and we decline Daughter's request to reconsider that ruling.

II. The Second Notice
The Second Order gave permission to the Guardian to hire co-counsel to represent the Guardian on appeal, including the defense of the fees awarded to Longnaker and Stewart. Indiana Appellate Rule 14(A) sets forth the only interlocutory orders that may be appealed as a matter of right. The only category that even arguably applies to the Second Order is interlocutory orders for the payment of *365 money. App. R. 14(A)(1). The Second Order, however, was not for the payment of money; in fact, the order explicitly directed the Guardian to submit any fee requests for trial court approval before disbursement. Thus, the Second Order was not appealable as of right, and Daughter did not seek to have it certified for interlocutory appeal. Under these circumstances, the motions panel properly dismissed the Second Notice and we decline Daughter's request to reconsider the ruling.

III. The Third Notice
The Third Notice was timely filed and concerned an interlocutory order for the payment of money; consequently, it clears these rudimentary hurdles. The Guardian, however, argues that Daughter has no standing to raise these claims, inasmuch as she is merely an expectant beneficiary.
Daughter argues that she is more than an expectant beneficiary, inasmuch as she is Mother's attorney in fact. As noted above, Mother revoked Daughter's power of attorney after Daughter filed the guardianship petition, and although Daughter objected to that revocation, the trial court never explicitly ruled on the issue. We can only conclude that by finding Mother to be incapacitated and in need of a guardian, the trial court implicitly found that the revocation of Daughter's power of attorney was invalid. See In re Guardianship of Shaffer, 711 N.E.2d 37, 40 (Ind.Ct.App. 1999) (finding that trial judge's conclusion that Shaffer was incompetent at the time he signed the power of attorney necessarily means that the power was invalid).
Therefore, the general durable power of attorney signed by Mother in 1996 was still valid at the time the trial court appointed guardians for Mother. See Ind. Code § 29-3-1-5(2) (providing that a durable power of attorney survives the incompetence of the person who granted the power). Furthermore, if an incapacitated person's attorney in fact is different than the person's guardian, the attorney in fact remains in control unless the trial court intervenes:
A guardian does not have power, duty, or liability with respect to property or personal health care decisions that are subject to a valid power of attorney. A guardian has no power to revoke or amend a valid power of attorney unless specifically directed to revoke or amend the power of attorney by a court order on behalf of the principal. A court may not enter an order to revoke or amend a power of attorney without a hearing. Notice of a hearing held under this section shall be given to the attorney in fact.
Ind.Code § 30-5-3-4(b). Here, unless and until the trial court holds a hearing and directs Mother's guardian(s) to revoke Daughter's power of attorney, the power remains valid. See Shaffer, 711 N.E.2d at 41 (affirming that "if a guardian is appointed, the guardian cannot revoke a power of attorney").[2]
Inasmuch as Daughter is still Mother's attorney in fact, we can only conclude that she has standing to raise the argument included in the Third Notice. See Appellant's App. p. 35 (properly executed document signed by Mother giving Daughter *366 durable power of attorney, authorizing Daughter "[t]o initiate legal action or respond to legal action in order to protect or preserve my estate and/or person"). The Third Notice relates to the trial court's April 7, 2009, orders granting Stone's appellate attorney fees in the amount of $4,833.67 and granting the Guardian's request for administrative fees in the amount of $4,029.83.
Daughter first argues that the fee order improperly grants attorney fees for time spent preparing and defending fee petitions. Though we agree that attorney fees may not be awarded for time spent preparing and defending fee petitions, Estate of Inlow, 735 N.E.2d 240, 254-55 (Ind. Ct.App.2000), Stone's fees stem from his time spent preparing the appellees' briefs on appeal. Therefore, Inlow does not apply. She does not contest the amount of Stone's fees. Therefore, we will not disturb the trial court's order granting those fees.
Daughter also contends that the trial court should not have granted the Guardian's request for administrative fees without holding a hearing on how those fees were amassed or any evidence establishing how the Guardian calculated those fees. Though the Guardian did not include a line item breakdown of how it calculated those fees, there is evidence elsewhere in the record of the way in which the Guardian spent its time. For instance, attorney Longnaker's fee petition reveals multiple phone calls with an officer of First Merchants and that same officer attended and testified at the hearing held on Daughter's request for attorney fees. That testimony certainly would have required preparation. These are but a few examples of the way in which the Guardian assuredly spent time caring for Mother's estate and participating in this litigation. Its requested fees of $4,209.83 amount to less than 1% of the Guardianship's estate. Though we would prefer that the Guardian include line item descriptions of how it amasses its fees in the future, we cannot conclude that its requested fees were unreasonable or that the trial court abused its discretion in granting those fees.
The judgment of the trial court is affirmed.
MAY, J., and BARNES, J., concur.
NOTES
[1] Though the motion to dismiss was filed a day after the Third Notice was filed, it does not address the Third Notice. We infer that the motion was filed before the appellees were apprised of Daughter's decision to file yet another notice of appeal in this matter.
[2] If Daughter's status as attorney in fact were revoked, at that time she would no longer have standing to raise arguments similar to those included in this appeal, inasmuch as she would only be an expectant heir at that time. Inlow v. Henderson, Daily, Withrow & DeVoe, 787 N.E.2d 385, 395-96 (Ind.Ct.App. 2003) (finding that an expectant heir neither has sufficient interest in the assets of the estate to bring claims related to those assets nor is a real party in interest; thus, no standing attaches), trans. denied.