Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 03 2014, 9:23 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRISTOPHER L. LAUX**
Notre Dame, Indiana

ATTORNEY FOR APPELLEES:

**MICHAEL E. BROWN**
**JAMES R. COHEE**
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SUZANNE THROGMARTIN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1307-CT-656 |
| | ) | |
| WILSON S. STOBER and | ) | |
| CHRISTOPHER E. CLARK, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
Cause No. 49D14-1110-CT-38813

**March 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Suzanne Throgmartin (Suzanne) appeals from the trial court's order granting Wilson S. Stober and Christopher E. Clark's motion for summary judgment and the trial court's denial of her motion to correct error pertaining to the summary judgment entered, contending that the trial court erroneously granted summary judgment in favor of Stober and Clark on her claim of legal malpractice against them.

We reverse and remand.

Suzanne retained Stober and Clark to represent her in litigation against her ex-husband, Don Throgmartin (Don), Don's brother, Gerald Throgmartin (Gerald), and other defendants. Suzanne alleged in her legal malpractice action against Stober and Clark that on July 15, 2010, during a mediation session regarding Suzanne's claim against Jan Helbert, who was one of the defendants, Stober and Clark pressured Suzanne into settling her claims against Gerald, and that settling with Gerald was against her wishes. When Suzanne ultimately refused to sign the settlement agreements, Stober and Clark withdrew from their representation of Suzanne.

Also on July 15, 2010, Suzanne suffered a nervous breakdown, and since that time has been disoriented, confused, and has suffered from memory lapses. On December 15, 2010, Suzanne executed a general durable power of attorney, with the help of new counsel, Christopher L. Laux (Laux), naming her friend, Ronald Canacci (Canacci), as her attorney in fact. The general durable power of attorney stated that Canacci had the power to institute legal proceedings on Suzanne's behalf. Canacci was also granted the power to acquire, lease,

2

and sell Suzanne's property, as well as conduct banking, invest, obtain insurance, and file taxes, among other things.

In the meanwhile, Suzanne began residing with the Canaccis. On March 10, 2011, Canacci and his wife filed a petition for the appointment of a temporary guardian over Suzanne, and instituted guardianship proceedings in Marshall Circuit Court. In their petition, the Canaccis stated that Suzanne was an incapacitated person, and that a guardian was needed to "take immediate steps to conserve [Suzanne's] assets and potential assets." *Appellant's Appendix* at 40. The Canaccis also claimed in their petition that "an emergency exists" urging the immediate appointment of a guardian, citing Suzanne's "inability to assist in conducting her pending legal matters, even with representation." *Id*. at 41. In particular, the Canaccis asked the trial court to grant them the ability as temporary guardians to "have the legal authority to fully assist [Suzanne's] attorneys in the various pending litigation, including be [sic] substituted as the legal party for [Suzanne], if necessary and required by the respective courts(s)." *Id*. at 42. The guardianship court appointed the Canaccis as temporary guardians over Suzanne.

Later, on May 5, 2011, the Canaccis filed a petition requesting to be appointed as Suzanne's permanent guardians. On June 9, 2011, Suzanne's sister, Kathryn Allen (Allen), and Suzanne's daughter, Diane Caudill (Caudill), objected to the Canaccis's petition, arguing that the Canaccis might be more concerned with the potential proceeds from the pending litigation than Suzanne's care. On July 27, 2011, Adult Protective Services (APS), intervened in the guardianship proceedings and sought the appointment of a guardian ad

litem for Suzanne. The guardianship court appointed Mary Lou Connolly as guardian ad litem for Suzanne the day of the request.

After many filings by the parties, the guardianship court appointed Allen as Suzanne's permanent guardian. Canacci and Suzanne's attorney agreed to the appointment. In the agreed order appointing Allen as guardian, the following provisions were included: "Upon taking such oath, the Clerk of this Court is directed to issue letters of guardianship of the person and estate to Kathryn Allen without any limitations as to her duties, responsibilities, or powers as set out in IC §§ 29-3-8-1, 29-3-8-2, and 29-3-8-4." *Id*. at 73. Suzanne's attorney, Laux, however, filed this legal malpractice action against Stober and Clark in Marion Superior Court the same date as the entry of the guardianship order appointing Allen as Suzanne's permanent guardian.

On February 25, 2012, Stober and Clark filed their motion for summary judgment against Suzanne, contending that Suzanne was not the real party in interest pursuant to Ind. Trial Rule 17. After Suzanne filed responsive pleadings, the trial court held a hearing on the motion, and ultimately granted Stober and Clark's motion for summary judgment. Suzanne filed a motion to correct error, which was denied by the trial court. Suzanne now appeals.

In their motion for summary judgment, without conceding or addressing the merits of the legal malpractice allegations against them, Stober and Clark asserted that the legal malpractice action filed on Suzanne's behalf was filed in contravention of Indiana law as Suzanne was not the real party in interest. T.R. 17(A) provides that "every action shall be

4

prosecuted in the name of the real party in interest." T.R. 17(A)(1) specifically addresses situations in which a person has entrusted their care to another in the following manner:

> An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought, but stating his relationship and the capacity in which he sues.

The rule further provides the following with respect to the capacity to sue or be sued:

> The capacity of a party to sue or be sued shall be determined by the law of this state, including its conflicts rules, except that a partnership or unincorporated association may sue or be sued in its common name.

T.R. 17(B).

Additionally, T.R. 17(C) specifically addresses the issue of the capacity to sue or be sued where the person is an infant or an incompetent person and reads as follows:

> An infant or incompetent person may sue or be sued in any action:
> (1) in his own name;
> (2) in his own name by a guardian ad litem or a next friend;
> (3) in the name of his representative, if the representative is a court-appointed general guardian, committee, conservator, guardian of the estate or other like fiduciary.
> The court, upon its own motion or upon the motion of any party, must notify and allow the representative named in subsection (3) of this subdivision, if he is known, to represent an infant or incompetent person, and be joined as an additional party in his representative capacity. If an infant or incompetent person is not represented, or is not adequately represented, the court shall appoint a guardian ad litem for him. The court may, in its discretion, appoint a guardian ad litem or an attorney for persons who are institutionalized, who are not yet born or in being, who are unknown, who are known but cannot be located, or who are in such position that they cannot procure reasonable representation. The court shall make such other orders as it deems proper for the protection of such parties or persons. Persons with claims against the estate of the ward or against the guardian of his estate as such may proceed under this rule or provisions applicable to guardianship proceedings. It shall not be necessary that the person for whom guardianship is sought shall be

5

represented by a guardian ad litem in such proceedings. Nothing herein shall affect the right of a guardian to sue or be sued in his personal capacity.

The court, in its discretion, may honor the infant's or incompetent's choice of next friend or guardian ad litem, but the court may deny approval or remove a person who is not qualified. A next friend or guardian under subsection (C) of this rule may be required by the court to furnish bond or additional bond and shall be subject to the rules applicable to guardians of the estate with respect to duties, terms of the bond required, accounting, compensation and termination.

Laux, on behalf of Suzanne, argues on appeal that the general durable power of attorney granted to Canacci survived the appointment of Allen as Suzanne's permanent guardian, and since it was never specifically revoked, Laux was authorized to file the legal malpractice action against Stober and Clark pursuant to Canacci's authority and direction on Suzanne's behalf. He contends that the trial court erred as a matter of law by granting summary judgment to Stober and Clark to the extent the trial court relied on the argument that the permanent guardianship extinguished Cannaci's power of attorney.

We discussed the coexistence of a unrevoked power of attorney held by one person and guardianship authority held by a different person, both pertaining to the same protected individual, in *In re Guardianship of L.R.*, 908 N.E.2d 360 (Ind. Ct. App. 2009). In that case we were presented with the issue of standing to raise certain claims. The ward's daughter was given a general durable power of attorney by her mother over financial and healthcare matters. The daughter became concerned with her mother's mental well-being and filed a petition for guardianship over her mother. Mother executed an attempted revocation of her daughter's power of attorney, to which the daughter objected. Mother's attorney responded by alleging that daughter had taken control of Mother's bank accounts, that daughter's name

6

appeared on the accounts, and that the address on the accounts had been switched to daughter's address.

There was no ruling on Mother's attempted revocation of daughter's power of attorney; however, after a hearing was held, the guardianship petition was granted in which the trial court appointed another person as guardian over the person and a bank as guardian over the estate of Mother. In pertinent part, when a request for appellate attorney fees was granted by the trial court, daughter appealed. The guardian argued on appeal that daughter had no standing to challenge the payment as she was merely an expectant beneficiary of her mother's estate, being the sole beneficiary of her mother's will and trust.

We noted the trial court's failure to rule on the attempted revocation of daughter's power of attorney, presuming that the trial court implicitly found the revocation invalid, an inference drawn from the necessity of appointing a guardian for Mother. We concluded that because a power of attorney survives the incompetence of the grantor of the power, and where the attorney in fact is a different person than the person's guardian, the attorney in fact remains in control unless the trial court intervenes.

In reaching this determination we cited to Ind. Code Ann. § 30-5-3-4(b) (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.), which provides as follows:

> A guardian does not have power, duty, or liability with respect to property or personal health care decisions that are subject to a valid power of attorney. A guardian has no power to revoke or amend a valid power of attorney unless specifically directed to revoke or amend the power of attorney by a court order on behalf of the principal. A court may not enter an order to revoke or amend

7

a power of attorney without a hearing.  Notice of a hearing held under this section shall be given to the attorney in fact.

We disposed of the guardian's challenge to daughter's standing to bring the claim by concluding that "unless and until the trial court holds a hearing and directs Mother's guardian(s) to revoke Daughter's power of attorney, the power remains valid." *In re Guardianship of L.R.*, 908 N.E.2d at 365.

In the present case, the order granting Allen permanent guardianship over Suzanne specifically revoked the temporary guardianship held by Canacci.  The record before us reveals no revocation of the general durable power of attorney held by Canacci.  Among the powers given to Canacci via the power of attorney were the following:

1. **Powers of Collection and Payment**.  To forgive, request, demand, sue for, (*including all litigation in Indiana and Florida, regarding my ex-husband Don Throgmartin, his brother Gerald, and any other litigation*), recover, collect, receive, and hold all sums of money, debts, dues, commercial paper, checks, drafts, accounts, deposits, legacies, bequests, devises, notes, interests, stock certificates, bonds, dividends, certificates of deposit, annuities, pension, profit sharing, retirement, Social Security, Medicare, insurance, and other contractual benefits and proceeds, all documents of title, all property, real or personal, tangible or intangible property, and property rights, and demands whatsoever, liquidated or unliquidated, now or hereafter owned by, or due, owing, payable, or belonging to me, or in which I have or may hereafter acquire an interest; to have, use, and take all lawful means and equitable and legal remedies and proceedings in my name for the collection and recovery thereof, and to adjust, sell, compromise, and agree for the same and to execute and deliver for me, on my behalf, and in my name, all endorsements, releases, receipts, or other sufficient discharges for the same;

. . . .

In addition to the foregoing, my attorney-in-fact hereunder may act as my alter ego with respect to any and all possible matters and affairs not otherwise enumerated herein and which I as principal can do through an agent.

*Appellant's Appendix* at 109-113 (emphases in original).

We agree that the order granting Allen permanent guardianship of Suzanne conferred upon Allen guardianship powers "without any limitations as to her duties, responsibilities, or powers as set out in IC § § 29-3-8-1, 29-3-8-2 and 29-3-8-4." *Id*. at 73. Nonetheless, Canacci's power of attorney remained unrevoked and valid.

We conclude that the trial court erred by granting summary judgment in favor of Stober and Clark on the ground that Suzanne was not the real party in interest. Canacci's power of attorney was valid and he agreed with the decision to proceed with the legal malpractice action. Under T.R. 17(C), Allen arguably was entitled to notice and the opportunity to be joined as an additional party in her representative capacity. This matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment reversed and remanded.

BAILEY, J., and MATHIAS, J., concur.