ATTORNEY FOR APPELLANT

Douglas M. Grimes
Douglas M. Grimes, PC
Gary, Indiana

ATTORNEYS FOR APPELLEES

For Eva Willis and Charles Reagins
Mark A. Bates
Schererville, Indiana

For Peoples Bank, SB
Benjamin T. Ballou
Bonnie C. Coleman
Hodges & Davis, P.C.
Merrillville, Indiana



FILED

Feb 11 2015, 8:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the
Guardianship of N.R.,

N.R.,

*Appellant-Protected Person,*

v.

Eva Willis and Charles Reagins,
Peoples Bank, SB,

*Appellees-Petitioners.*

February 11, 2015

Court of Appeals Case No.
45A05-1303-GU-150

Appeal from the Lake Superior Court

The Honorable Calvin Hawkins,
Judge

Cause No. 45D02-1206-GU-27

**Robb, Judge.**

# Case Summary and Issue

[1]     N.R. was the subject of guardianship proceedings in 2012, as part of which the

trial court approved requests for guardian fees, attorney fees, and costs from

former temporary guardians Eva Willis, Charles Reagins ("Charles"), and Peoples Bank, SB (the "Bank"). The trial court denied N.R.'s objection to its orders that the fees and costs of the former temporary guardians be paid out of his estate. N.R. now raises several issues for our review, which we consolidate and restate as: whether the trial court abused its discretion in awarding fees and costs to the former temporary guardians by excluding evidence N.R. wished to offer to show that Willis and Charles engaged in misconduct and that the temporary guardianship was improper.

[2] Concluding the excluded evidence, if credited, would make the award of fees and costs unreasonable, we reverse and remand with instructions that the trial court hear N.R.'s evidence and reconsider the fee petitions.

# Facts and Procedural History

[3] On January 14, 2012, N.R., who was eighty-one years old, executed a general power of attorney appointing his daughter, Nelva Berry, as his attorney-in-fact. Berry had taken care of N.R., his business, and his bills for several years prior. As N.R.'s attorney-in-fact, Berry had "full power and authority to act" on N.R.'s behalf. Appendix of Appellant at 36. Berry was authorized "to manage and conduct all of [N.R.'s] affairs and to exercise all of [N.R.'s] legal rights and powers . . . ." *Id.*

[4] On June 25, 2012, Willis (N.R.'s niece) and Charles (N.R.'s nephew) filed an emergency petition to be appointed temporary co-guardians over N.R. and his

estate, alleging N.R. "is unable to maintain and care for his financial affairs and person because he suffers the following incapacities: dementia with slight memory loss." *Id.* at 16. Attached to the petition was a physician's report from February 2012 in which the doctor reported that N.R. was not incapacitated and was in good physical condition, although "he does have dementia with slight memory loss but is able to speak and behave in an acceptable way." *Id.* at 20. The doctor declared N.R. "partially" incapable of making personal and financial decisions because he is "only slightly forgetful," and posited that it would be appropriate for N.R. to live in his own home "with the relatives checking in on him every day. He only needs minimal assistance." *Id.* at 21. The petition further alleged "[t]hat there is no guardian of the person or estate appointed for [N.R.] in this state or any other state . . . ." *Id.* Finally, the petition alleged that the need exists for the appointment of a temporary and permanent guardian for N.R. because:

> (a) he cannot handle his financial affairs, and his assets need to be preserved for his support, maintenance, care, and proper medical treatment;
>
> (b) his ex-wife of forty years has removed him from the State of Indiana and has taken him to Texas. She is attempting to convince him to withdraw cash from his accounts and remove other assets;
>
> (c) there is a need to protect his assets from his daughter who has previously removed assets from him;
>
> (d) his real estate taxes have not been paid; and
>
> (e) his income tax returns have not been filed.

*Id.* at 17-18.

[5] Without providing N.R. or Berry notice or holding a hearing at which N.R. appeared, the trial court issued an order the same day the petition was filed:

> [T]he Court . . . now finds that the allegations contained in said petition are true, and that a temporary guardian of the person and estate of [N.R.] should be appointed.
>
> The Court further finds that [N.R.] is in need of a guardian to protect his assets and that it is in the best interests of said [N.R.] that a temporary guardian be appointed over his person and estate.
>
> The Court finds that a guardian has not previously been appointed for [N.R.]; that an emergency exists; that the welfare of [N.R.] requires immediate action; that no other person has the authority to act under the circumstances; and that immediate and irreparable loss of property . . . may result before notice and a hearing can be held . . . .

[The Bank's] App. at 1.[1] Accordingly, the trial court appointed Willis and Charles as temporary co-guardians over N.R. and his estate for a period not to exceed sixty days; ordered them to take an oath but did not order them to post a bond; stated that they would have "powers and responsibilities without limitation"; and set a hearing to determine whether Willis and Charles should be appointed permanent co-guardians. *Id.*

[6] On July 17, 2012, Berry and Monique Wilson (N.R.'s step-daughter) filed petitions to participate in the guardianship proceedings and objections to the petition for appointment of a guardian. The trial court held a hearing on August 7, 2012, at which Willis and Charles, Berry and Wilson, and N.R. all

---

[1] The order states that the court heard evidence on the petition, but the Chronological Case Summary reflects no hearing, and in any event, the order also states that Willis and Charles appeared only by counsel.

appeared. The parties entered into the following stipulated agreement: Willis and Charles resigned as temporary guardians in open court; the Bank was appointed temporary guardian over N.R.'s estate; and Berry and Wilson were appointed permanent co-guardians over N.R.'s person. The court approved the agreement and set a hearing regarding a permanent guardianship over N.R.'s estate.

[7] Following a November 8, 2012, hearing at which the parties agreed a guardianship was in N.R.'s best interest "not because of incapacity but due to his age," *id.* at 4, the court entered an order continuing Berry and Wilson as permanent co-guardians of N.R. and also appointing them permanent co-guardians of his estate. Berry and Wilson were ordered to post a $400,000 bond, and all former temporary guardians were ordered to submit petitions for fees and costs within ten days. The court approved Willis's and Charles's petition for attorney fees of $15,030.00 and costs of $177.55 (totaling $15,207.55).[2] In a separate order, the court also approved the Bank's petition requesting temporary guardian fees for its services in the amount of $4,275.00, temporary guardian's attorney fees of $3,454.25, and costs of $55.45 (totaling $7,784.70). N.R. then filed an objection to the court's orders awarding fees without first allowing time for objection and a hearing.

---

[2] The order approving the award of attorney fees to Willis's and Charles's attorneys noted that "the temporary co-guardians are not seeking a fee." App. of the Appellees Eva Willis and Charles Reagins at 1.

The court held a hearing on N.R.'s objection to its orders allowing fees on March 19, 2013. At the hearing, N.R. attempted to present evidence showing that Willis's and Charles's misconduct before and during the guardianship proceedings made the court's order appointing Willis and Charles as temporary co-guardians improper and the award of fees and costs unreasonable. The court, however, refused to hear the evidence and denied N.R.'s objection, issuing an order that the fees and costs were reasonable and were to be paid out of the guardianship estate within ten days. N.R. now appeals the court's awards of fees and costs.[3]

# Discussion and Decision

## I. Standard of Review

In guardianship proceedings, all findings and orders are within the trial court's discretion. Ind. Code § 29-3-2-4(a); *In re Guardianship of Hollenga*, 852 N.E.2d 933, 936 (Ind. Ct. App. 2006). We review only for an abuse of discretion, which occurs if the decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Hollenga*, 852 N.E.2d at 937. The right to compensation from the estate "should

---

[3] The timeliness of N.R.'s appeal was the subject of a motion to dismiss prior to this case being fully briefed, and this court dismissed the appeal. *See* Order dated July 26, 2013. The Indiana Supreme Court thereafter granted N.R.'s petition to transfer, vacated the order dismissing the appeal, and remanded to this court for consideration on the merits. *See* Order dated April 10, 2014. Each of the appellees has raised the timeliness issue again in its brief; however, the issue was decided by the Indiana Supreme Court and we will not entertain it further.

not depend upon the result of the litigation but rather upon the reasonable necessity for such litigation." *Malachowski v. Bank One, Indianapolis, N.A.*, 682 N.E.2d 530, 533 (Ind. 1997) (quotation omitted). Thus, when ruling on an attorney fee petition in a guardianship proceeding, the trial court should consider not only the outcome of the proceedings but also "(1) whether the parties acted reasonably and in good faith in incurring the fees, (2) whether the facts were in dispute, (3) whether the legal issues were complex, and (4) whether any party's misconduct caused the proceedings." *In re Guardianship of Shaffer*, 711 N.E.2d 37, 41 (Ind. Ct. App. 1999), *trans. denied*. "A trial court may not award fees to a party whose misconduct necessitated the proceedings." *Id.*

## II. Award of Fees and Costs

[10] "A guardian is entitled to reasonable compensation for services as guardian and to reimbursement for reasonable expenditures made in good faith on behalf of the protected person." Ind. Code § 29-3-9-3. Further:

> If not otherwise compensated for services rendered, any guardian, attorney, physician, or other person whose services are provided in good faith and are beneficial to the protected person or the protected person's property is entitled to reasonable compensation and reimbursement for reasonable expenditures made on behalf of the protected person. These amounts may be paid from the property of the protected person as ordered by the court.

Ind. Code § 29-3-4-4.

[11] N.R. contends the trial court abused its discretion in awarding fees and costs to the former temporary guardians because it refused to hear evidence relevant to the determination of whether they were incurred in good faith. The trial court

was only willing to entertain evidence regarding whether the amount of the fees was unreasonable; whereas N.R. sought to show that the fees were unreasonable because they were incurred unnecessarily. We review the trial court's exclusion of evidence for an abuse of discretion. *In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014).

## A. Willis and Charles

[12] The trial court allowed Willis's and Charles's petition for attorney fees and costs in the total amount of $15,207.55 and denied N.R.'s objection to the same. N.R.'s objection to the trial court's order alleged many facts which the trial court refused to allow into evidence at the hearing. For purposes of determining whether the trial court abused its discretion in this matter, we assume the following facts are true.

[13] In January 2012, Willis, Charles, and Freo Reagins ("Freo") (N.R.'s brother), without N.R.'s or Berry's consent or knowledge, acted unilaterally in: changing the locks and the burglar alarm code on N.R.'s home; deactivating the garage door opener on the home; switching N.R.'s mailing address from Berry's home address to an unknown P.O. Box location without providing Berry or N.R. a key; and adding their names as joint owners, beneficiaries, and account managers to several of N.R.'s bank accounts, credit cards, and investments. Because Willis, Charles, and Freo refused to communicate with N.R. or Berry, the changed mailing address resulted in months of unpaid bills, damaging N.R.'s credit and causing his insurance coverage to lapse.

[14] At some point in early 2012, Willis, Charles, and Freo took N.R. to see David Mears, the attorney who represented Willis and Charles during the guardianship proceedings and in whose favor the attorney fee award was ultimately entered. N.R. gave Mears $5,000 during the meeting, but at the hearing on N.R.'s objection, Willis could not recall what the money was for. Mears stipulated at the hearing that $5,000 was paid to him, that it was in his trust account, and that it was not reflected on the statement of account submitted in support of his fee request. Mears also conceded that some of the fees reflected on the statement were incurred prior to the filing of the guardianship petition. Virtually all of the fees were incurred prior to the agreed guardianship in November 2012.[4]

[15] This issue arises because Willis and Charles filed an emergency petition for appointment as temporary co-guardians over N.R.'s person and estate. Indiana Code section 29-3-3-4 governs the emergency appointment of a temporary guardian:

> (a) If:
>
>   (1) a guardian has not been appointed for an incapacitated person . . .;
>
>   (2) an emergency exists;
>
>   (3) the welfare of the incapacitated person . . . requires immediate action; and

---

[4] Mears's statement shows 66.80 hours billed at $225.00 per hour for work performed beginning on February 1, 2012 and ending on November 21, 2012.

(4) *no other person appears to have authority to act in the circumstances*;

the court, on petition by any person or on its own motion, may appoint a temporary guardian for the incapacitated person . . . for a specified period not to exceed ninety (90) days. *No such appointment shall be made except after notice and hearing unless it is alleged and found by the court that immediate and irreparable injury to the person or injury, loss, or damage to the property of the alleged incapacitated person . . . may result before the alleged incapacitated person . . . can be heard in response to the petition.* If a temporary guardian is appointed without advance notice and the alleged incapacitated person . . . files a petition that the guardianship be terminated or the court order modified, the court shall hear and determine the petition at the earliest possible time.

(b) If:

(1) a petition is filed under this section for the appointment of a temporary guardian; and

(2) each person required to receive notice under IC 29-3-6-1(a) has not:

(A) received a complete copy of the petition and notice required by IC 29-3-6-2 before the court considers and acts on the petition; or

(B) received actual notice of the filing of the petition and specifically waived in writing the necessity for service of the notice required under IC 29-3-6-2 before the court considers and acts on the petition;

the petitioner shall, on the earlier of the date the court enters an order scheduling a hearing on the petition or the date the court enters an order appointing a temporary guardian, serve complete copies of the petition, the court's order, and the notice required by IC 29-3-6-2 on every person entitled to receive notice . . . . The requirements of this subsection are in addition to the petitioner's obligations under Rule 65 of the Indiana Rules of Trial Procedure to make a specific showing of the petitioner's efforts to provide advance notice to all interested persons or the reasons why advance notice cannot or should not be given.

* * *

(d) A temporary guardian appointed under this section has only the responsibilities and powers that are ordered by the court. *The court shall order only the powers that are necessary to prevent immediate and substantial injury or loss to the person or property of the alleged incapacitated person . . . in an appointment made under this section.*

(Emphasis added.)

[16] As N.R.'s power of attorney, Berry had the authority to act on N.R.'s behalf, especially with regard to his finances, which seems to be the main focus of the guardianship petition. However, Willis's and Charles's petition failed to inform the trial court of the existence of the power of attorney. If they were aware of it, then the omission of that information from their petition was misleading. And whether or not they were aware of it, proper notice and a hearing would have brought it to the court's attention. Moreover, although the petition alleged an emergency existed, it did *not* allege that immediate and irreparable injury might occur if N.R. were allowed an opportunity to respond, and it is clear from the language of the statute that those are two separate conditions. Although the *trial court* found that immediate and irreparable injury might occur, the statute requires that such be "alleged *and* found" before dispensing with notice and a hearing. Ind. Code § 29-3-3-4(a) (emphasis added).

[17] The petition also fails to specifically allege that efforts had been made to provide notice of the filing of the petition to the appropriate people—despite listing therein the names and addresses of those people—or to state reasons why advance notice could not or should not be given. Ind. Code § 29-3-3-4(b). Had such notice been given and a hearing held before the appointment of Willis and Charles as temporary co-guardians, N.R. would have had the opportunity to

present evidence about the power of attorney, which would have impacted who should be appointed as temporary guardian. *See* Ind. Code § 30-5-3-4(a) ("A principal may nominate a guardian for consideration by the court if protective proceedings for the principal's person or estate are commenced. The court shall make an appointment in accordance with the principal's most recent nomination in a power of attorney except for good cause or disqualification."). Further, N.R. would have been able to present evidence about Willis's and Charles's actions which, in fact, may have caused the emergency they alleged existed and which the trial court later refused to hear. Finally, we note that the trial court did not limit the temporary co-guardians powers as required by the statute to only those powers necessary to prevent immediate loss. *See* Ind. Code § 29-3-3-4(d).

[18] In short, the order appointing Willis and Charles temporary co-guardians over N.R.'s person and estate should not have been entered without notice and a hearing. Proceeding as it did on Willis's and Charles's emergency petition, there is a legitimate concern that the trial court did not scrutinize whether a temporary guardianship was needed at all, nor did it scrutinize whether Willis and Charles were the appropriate people to be appointed as co-guardians. That the ultimate outcome of the proceedings was a guardianship to which N.R. agreed does not mean that the original order appointing Willis and Charles was necessarily appropriate in retrospect.

[19] Further compounding the problem, even if the emergency order was appropriate, the guardianship petition alleged that a guardianship was

necessary, in part, because N.R. was unable to handle his financial affairs, his real estate taxes had not been paid, and his income tax returns had not been filed. If N.R. had been allowed to introduce evidence to develop the facts alleged in his objection, the facts supporting the petition would have been in dispute, raising questions as to whether Willis and Charles acted reasonably and in good faith in incurring fees to petition for guardianship and whether their misconduct—especially in changing N.R.'s mailing address and interfering with his financial accounts—contributed in whole or in part to the deficiencies they alleged necessitated these proceedings.

[20] As noted above, in ruling on an attorney fee petition, the trial court is to consider whether the parties acted reasonably and in good faith, whether there are disputed facts, and whether any party's misconduct caused the proceedings. *In re Shaffer*, 711 N.E.2d at 41. It is clear from those factors that in ruling on a fee petition, a trial court is to look not just to whether the *amount* of the fees is reasonable, but also to whether incurring the fees was *necessary*. N.R.'s counsel stated several times at the hearing on N.R.'s objection to the fees that the fees were being challenged as unnecessary because of misconduct. *See, e.g.,* Transcript at 76, 78-79. The trial court repeatedly refused to hear evidence of misconduct, relying on an earlier determination that the fees were incurred in good faith – a finding also made without the benefit of hearing relevant evidence.

[21] The trial court's order denying N.R.'s objection to the fees indicates that N.R. failed to present any admissible evidence to support his objection. On the

contrary, N.R.'s evidence was admissible as relevant to the determination of whether the temporary guardianship was proper and ultimately, whether the fees incurred in seeking the guardianship were necessary. The trial court abused its discretion in excluding that evidence and therefore abused its discretion in ordering Willis's and Charles's fees to be paid without giving proper consideration to the factors. N.R. has a right to show that the original guardianship was improper, and if it was, Willis and Charles are not entitled to an award of fees from the guardianship estate. We therefore reverse the trial court's order denying N.R.'s objection to Willis's and Charles's petition for fees and remand to the trial court to hear N.R.'s evidence regarding whether those fees were necessary and, if so, whether the amount is reasonable.[5]

## B. The Bank

[22] The trial court also allowed the Bank's petition for guardian and attorney fees in the sum of $7,784.70. The Bank acted as substitute temporary guardian of N.R.'s estate from August 7, 2012, until Berry and Wilson were appointed permanent guardians of N.R.'s estate on November 8, 2012.

[23] Those who provide services in good faith and for the benefit of the protected person are entitled to reasonable compensation and reimbursement for their

---

[5] Despite evidence being introduced at the objection hearing that Mears had already been paid $5,000 by N.R. which was not reflected on Mears's statement of fees, the trial court found that the amount of fees requested by Mears was reasonable and ordered that they be paid in total. Although it is unclear what that fee was for, the trial court made no effort to find out and made no provision for it to be deducted from the fees if appropriate. This payment should also be considered on remand.

reasonable expenses. *See* Ind. Code § 29-3-9-3 (guardian fee); Ind. Code § 29-3-4-4 (attorney fee). It is unclear how the Bank came to be involved in this matter, but before undertaking the position, it was incumbent upon the Bank to investigate and determine whether its guardianship services were necessary and appropriate. There is no evidence that the Bank did so and therefore no evidence that it provided its services to N.R. in good faith. The Bank is entitled to payment for its services, but it may not be entitled to payment from N.R.'s estate. If it is determined on remand that Willis and Charles did not act in good faith and that the temporary guardianship was improper, the burden of compensating the Bank should be theirs. We therefore reverse the trial court's award of fees to the Bank from the guardianship estate and remand for reconsideration of the Banks' fee petition consistent with this opinion.

# Conclusion

The trial court abused its discretion in excluding evidence relevant to the determination of whether the fees and costs sought to be paid from the guardianship estate were reasonable. The trial court's orders are reversed, and this case is remanded for further proceedings.

Reversed and remanded.

Baker, J., and Kirsch, J., concur.