

**FILED**

Jul 26 2018, 8:37 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey S. Dible
Maggie L. Smith
Frost Brown Todd, LLC
Indianapolis, Indiana

Tamatha A. Stevens
Stevens & Associates, P.C.
Indianapolis, Indiana

Jeffrey C. Eggers
Jeffrey C. Eggers, P.C.
Franklin, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA CHAPTER OF THE NATIONAL
ACADEMY OF ELDER LAW ATTORNEYS

Robert W. Fechtman
Fechtman Law Office
Indianapolis, Indiana

Elizabeth A. Homes
Law Office of Elizabeth A. Homes, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Matter of
Guardianship of Timothy A.
Robbins, an Adult

July 26, 2018

Court of Appeals Case No.
18A-GU-242

Appeal from the Johnson Superior
Court

The Honorable Kevin Barton,
Judge

Trial Court Cause No.
41D01-1301-GU-8

**Baker, Judge.**

[1]     Timothy Robbins (Timothy) sustained catastrophic, permanent injuries from a car accident; he will require full-time care for the rest of his life.  His father became his guardian, filed a lawsuit on Timothy's behalf, and reached a settlement agreement totaling over $17 million.  Timothy's father asked that the trial court authorize the balance of the settlement agreement to be placed in a special needs trust.  The trial court, expressing its disagreement with the legislative policy underlying special needs trusts, placed only $1 million into the trust and ordered the remaining funds be paid directly to the guardianship estate.  Finding that the trial court exceeded the bounds of its authority and made errors of law in its ruling, we reverse and remand with instructions that the trial court direct the full, available amount of the settlement proceeds be placed into Timothy's special needs trust.

# Facts

In January 2013, the vehicle being driven by then-42-year-old Timothy was side-swiped by a semi truck, resulting in Timothy being ejected from his vehicle. As a result of the accident, Timothy sustained a devastating traumatic brain injury, multiple skull and facial fractures, and additional serious injuries. He remained in a coma for many weeks. Timothy was eventually transferred to a nursing home, where he remains today with full-time care. His brain injuries and resulting dementia are catastrophic and have resulted in permanent and total impairment, including impairments in "intelligence, reasoning, self-care, adaptive functioning, orientation, executive functioning, memory, language skills, psychomotor functioning, and fine motor functioning." Appellant's App. Vol. II p. 112. Timothy will never again live independently and will continue to require full-time care for the rest of his life. Additionally, his medical team believes that his condition will continue to deteriorate with time.

On February 25, 2013, Timothy was adjudicated to be an incapacitated adult person. His father, Shelly Robbins (Guardian), was appointed to be the permanent guardian over Timothy and his estate. Guardian filed a lawsuit on behalf of Timothy against the tortfeasors responsible for the accident; a jury trial took place in July 2017. The jury found in favor of Timothy and awarded damages in the amount of $18.5 million. The defendants indicated an intent to appeal the verdict. Thereafter, the parties attended post-trial mediation. Guardian was willing to settle the case because Timothy had spent "almost five years now not getting some of the treatment and therapies that he needs to

benefit him and [Guardian] felt it was in his best interests to get the case resolved . . . to provide Tim[othy] the care and treatment he needs sooner rather than later." Tr. Vol. II p. 13. The parties agreed to settle the case for $17.75 million.

[4] After reaching the settlement agreement, Guardian retained an elder law attorney to help structure Timothy's finances to ensure that Timothy would be provided with the care he needs for the rest of his life. Guardian's concerns stemmed from the fact that following the accident, Timothy was receiving Medicaid and Supplemental Security Income (SSI). If the settlement proceeds were paid directly to Timothy, it would have caused him to lose eligibility for those benefits.

[5] As will be more fully explained below, both the United States Congress and the Indiana General Assembly have enacted statutes allowing for the creation and funding of "special needs trusts," which permit a disabled person to shield assets that would otherwise affect Medicaid and SSI eligibility. These statutes were adopted, in part, to address the problem present in this case, where a disabled adult receives a large, lump sum payment from third-party litigation that would eliminate the availability of public benefits. Allowing disabled persons to shield these litigation proceeds in special needs trusts is based on the public policy determination that it is beneficial to allow a disabled person to have *both* public benefits *and* an additional source of financial support during the person's lifetime.

[6]     Special needs trusts are intended to supplement government benefits and provide for treatment, services, equipment, therapy, etc., that are not covered by Medicaid. Where a disabled person's future needs are unknown and unquantifiable, a special needs trust protects that person from a situation in which the litigation proceeds are insufficient to cover the person's medical care and needs over the course of his life. The flip side to a special needs trust is a statutory mandate that, upon the death of the disabled person, any assets remaining in the trust will be used to pay back to the State an amount equal to the total benefits paid to the disabled person. Only after the State is reimbursed in full may the remaining funds in the trust, if any, be distributed to the disabled person's heirs.

[7]     On December 22, 2017, Guardian asked that the trial court approve the settlement agreement; Guardian also sought authority to pay attorney fees and litigation expenses and to satisfy the lien asserted by Medicaid for medical care already provided to Timothy. After making all those payments, the net settlement to Timothy was $11.2 million. The structured settlement agreement provided that $4.5 million of the net amount would be funded through two annuities, providing Timothy guaranteed monthly payments for twenty-five years, and that the remaining $6.75 million would be paid in a lump sum. Also on December 22, 2017, Guardian sought authority to create and fund the Timothy Special Needs Trust with the $6.75 million lump sum.

[8]     The trial court held a hearing on Guardian's requests on December 28, 2017. There were no objections raised with respect to any of Guardian's requests.

After hearing argument made by Guardian's attorneys, the trial court stated that it was "aware of the rules" regarding special needs trusts but that it disagreed with the legislative policy, explaining that "it's . . . the legal fiction of impoverishment which I'm having trouble buying into when we have 12 million sitting here." *Id.* at 27.

[9] On January 8, 2018, the trial court approved Guardian's requests to compromise and settle Timothy's personal injury claim in the amount of $17.75 million, to pay the personal injury action attorney fees and expenses, and to satisfy the existing Medicaid lien. The trial court denied Guardian's request to fund the Timothy Special Needs Trust in the manner requested by Guardian. Instead, the trial court allowed only $1 million of the $6.75 million to be placed in the trust, ordering the remaining $5.75 million to be paid directly to the Guardianship Estate. The trial court provided three reasons for this decision:

- "[T]he Guardian's request to place all assets received from the personal injury settlement into a special needs trust would shift considerable expenses . . . to the taxpayer."

- "The amount received for the future care of Timothy A. Robbins under the Mediated Settlement Agreement is adequate to meet his future needs without public assistance."[1]

---

[1] Although we reverse on other grounds, we note that the record does not support this finding. Instead, the record reveals that, as would be expected, there is no way of knowing what the cost or extent of Timothy's needs will be over the course of his lifetime. It is undisputed that his needs are extensive, his condition will further deteriorate with time, and there is no way to know how long his lifespan will be. Under these circumstances, there is no basis to conclude that the amount received pursuant to the settlement agreement will be adequate to meet Timothy's needs for the remainder of his life.

- The Timothy Special Needs Trust "appears to be for the benefit of the Guardian and the descendants of Timothy A. Robbins as opposed to Timothy A. Robbins."

Appellant's App. Vol. II p. 16. Guardian now brings this uncontested appeal.[2]

# Discussion and Decision

In guardianship proceedings, we will reverse if a trial court's decision is against the logic and effect of the facts and circumstances before it or if the court has misinterpreted the law. *E.g.*, *In re Guardianship of N.R.*, 26 N.E.3d 97, 100 (Ind. Ct. App. 2015). As always, we apply a de novo standard of review to questions of law. *E.g.*, *In re Guardianship of Stant*, 50 N.E.3d 149, 150 (Ind. Ct. App. 2016).

# I. Special Needs Trusts

Special needs trusts are a creation of both federal and state legislation. We turn first to the federal program, which must begin with a brief examination of SSI and Medicaid. SSI provides a minimum level of income for disabled persons (among others). *See* 20 CFR § 416.1202. Medicaid is a joint federal- and state-funded program that provides certain medical services to disabled persons who meet requisite criteria. In Indiana, to qualify for Medicaid, an applicant must

---

[2] The trial court granted Guardian's request to modify the timing of the annuity schedule and stay all settlement payments during the pendency of this appeal.

meet both an income eligibility test and a resources eligibility test. *State v. Hammans*, 870 N.E.2d 1071, 1074 (Ind. Ct. App. 2007).

[12] In 1993, Congress passed the federal Omnibus Budget Reconciliation Act of 1993 (OBRA '93). One of the primary purposes of this legislation was to curb abuses that had arisen as a result of the elderly using trusts to shield their assets. *In re Abraham XX.*, 900 N.E.2d 136, 139 (N.Y. 2008). As a general rule, therefore, OBRA '93 provides that a Medicaid applicant's trust assets are now considered available resources that count towards determining that applicant's eligibility for government-funded resources such as SSI and Medicaid. 42 U.S.C. § 1396p(d)(3).

[13] As part of the OBRA '93 discussions, however, "[d]isability advocates . . . lobbied the federal government for protection[,] . . . striking a balance between the tightened eligibility requirements and the heightened needs of severely disabled individuals who receive a lump sum of money sizeable enough to end their Medicaid eligibility." *Abraham XX.*, 900 N.E.2d at 139. In response to these concerns, Congress drafted OBRA '93 to include special needs trusts as an exception to the general rule. 42 U.S.C. § 1396p(d)(4)(A). As noted above, special needs trusts allow disabled individuals to place assets into a trust without those assets factoring into the eligibility determination for SSI or Medicaid, provided that the State must be paid back from any remaining trust balance upon the death of the disabled person.

[14] With respect to the State program, our General Assembly adopted Indiana Code chapter 12-15-2 to govern eligibility for the state Medicaid program. Indiana Code section 12-15-2-17(f) incorporates the federal special needs trust provisions exempting such trusts from the eligibility determination. *See also* 405 Ind. Admin. Code 2-3-22. Indiana likewise has a provision requiring that upon the death of the disabled person, any amounts remaining in the trust must be repaid to the State. I.C. § 12-15-9-1. Thus, both federal and state law permit disabled individuals to place what would otherwise be available assets into a special needs trust to shield those assets for purposes of determining Medicaid or SSI eligibility, so long as the trust provides that, upon the death of the disabled person, any remaining assets will be used to pay back to the State an amount equal to the total benefits paid for the care of the disabled person.

[15] Special needs trusts serve public policy considerations that both Congress and our General Assembly have deemed important. Specifically, special needs trusts provide disabled people with the power to obtain additional healthcare services and equipment that are not covered by Medicaid, such as full-time care, wheelchairs if needed more often than every five years, dental work and dentures, eyeglasses if needed more often than every five years, home modifications, accessible vehicles, funerals, or anything to improve the quality of life of the disabled person. Amicus Br. p. 4-6.

[16] Additionally, special needs trusts mean that the disabled person no longer has to "spend down" the proceeds of a litigation settlement before SSI and

Medicaid are available. The reason that this is so crucial has been explained as follows:

> If the [special needs] trust had not been established, the settlement from the tort action would be available to [the disabled ward], who would then be ineligible for [M]edicaid assistance. [The guardian] would be forced to exhaust the settlement to meet [the ward's] medical needs before reapplying for [M]edicaid assistance. Without [M]edicaid providing the ward's basic medical needs, the tort settlement would be depleted much more quickly than if it were used merely to supplement [M]edicaid assistance. Once he became eligible again for [M]edicaid, [he] would receive [M]edicaid assistance but would have no assets remaining with which to provide for his supplemental needs.

> By contrast, with the creation of the trust, [the ward] will retain his [M]edicaid eligibility and [the guardian] can provide for his supplemental needs from the trust assets, while [M]edicaid provides for his basic medical care.

*Dep't of Social Servs. v. Saunders*, 724 A.2d 1093, 1095-96 (Conn. 1999).

[17] As the court in *In re Abraham XX.* explained, special needs trusts reflect "a policy decision to balance the needs of the severely disabled and the State's need for funds to sustain the system." 900 N.E.2d at 140. To further Medicaid's purpose of providing medical assistance to people in need,

> the State agrees to continue paying Medicaid costs—in instances where it would otherwise be relieved of this obligation—in exchange for the *possibility* of reimbursement upon the recipient's death. The State in a sense is like an insurer calculating risk. For every recipient who depletes the trust before death, the State can

expect some trusts to have sufficient assets upon a recipient's death to offset the additional cost of continuing Medicaid payments for these severely disabled individuals who otherwise would be ineligible. Moreover, the State's right to reimbursement occurs only upon the death of the beneficiary—at a time when the life-enhancing purpose of the trust can no longer be effectuated.

*Id.* (emphasis original). As aptly put by Guardian,

[t]he legislative decision at the federal and state level to allow a disable[d] person to place substantial assets received from litigation proceeds in a special needs trust presents a "win-win" in situations where future needs are unknown and cannot be quantified at the outset. Ultimately, if those litigation proceeds *are* sufficient to cover a disabled person's medical care and needs throughout his life, then upon his death, the public benefits he received will be reimbursed in full. But if it turns out that the litigation proceeds were *not* sufficient to cover medical care/needs and end up being exhausted before the disabled person dies, then the litigation proceeds will go much further by allowing the disabled person to also utilize public benefits.

Appellant's Br. p. 26-27 (emphases original).

# II. Trial Court's Order

In this case, the trial court denied Guardian's request to put the full amount of the settlement reached on behalf of Timothy into a special needs trust. Indeed, it agreed to place only $1 million into the trust, ordering that the remaining $5.75 million be paid directly to the guardianship estate.

[19] The trial court refused to place the full amount of the settlement agreement into the special needs trust because it disagrees with the legislatively-mandated "legal fiction of impoverishment," tr. vol. II p. 27, and disapproves of the shift of the expense to taxpayers. The trial court may well have a genuine disagreement with the policy decisions of our state and federal legislators, but it is still bound to abide by them. *See, e.g.*, *Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 27 N.E.3d 737, 749 (Ind. 2015) (holding that public policy is "exclusively for the General Assembly" and "the wisdom or desirability of particular legislation is not a matter for the judiciary to determine"); *S. Shore Baseball, LLC v. DeJesus*, 11 N.E.3d 903, 909 (Ind. 2014) (emphasizing the well accepted principle that "under our system of limited government, the legislative branch is entrusted with decisions of public policy"); *Etzler v. Ind. Dep't of Revenue*, 43 N.E.3d 250, 255-56 (Ind. Ct. App. 2015) (holding that the "formulation of public policy is a task entrusted to the legislature, not the court").

[20] Here, there are no constitutional concerns preventing the legislature's policy choices from being enforced. Both our federal and state legislators have made an express policy decision to allow for a "legal fiction of impoverishment" by placing assets in a special needs trust, knowing full well that it has the potential to shift expenses to the taxpayer, but trying to ameliorate that cost by requiring that any remaining trust proceeds be repaid to the State upon the disabled person's death. While the trial court is free to disagree as to the wisdom of the legislature's policy choices, the trial court exceeded the bounds of its authority by refusing to enforce this policy choice based on that disagreement.

[21]     The trial court also refused to place the full amount of the settlement proceeds into the special needs trust because it concluded that the trust was solely for the benefit of the Guardian and Timothy's descendants. This is a mistake of law. As a matter of law, a special needs trust must contain a provision declaring that, upon the death of the disabled trust beneficiary, the total amount of Medicaid benefits must be paid back *first*, *before* any distributions to heirs are made. 42 U.S.C. § 1396p(d)(4)(A); I.C. § 12-15-2-17(f). Additionally, the special needs trust must be administered for the exclusive benefit of the disabled individual beneficiary for his or her lifetime. In other words, so long as the disabled individual is alive, other persons such as family members—or the guardian— cannot receive a direct benefit from the trust assets, and upon the disabled person's death, the State gets repaid before anyone else inherits a dime. Consequently, it is a *legal impossibility* that Timothy's special needs trust is designed to "benefit" either the Guardian or Timothy's descendants, and the trial court's conclusion in this regard was erroneous.

[22]     The judgment of the trial court is reversed in relevant part and remanded with instructions to direct that the full, available amount of settlement proceeds be placed in Timothy's special needs trust.

Kirsch, J., and Robb, J., concur.