## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 21 2020, 8:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANTS | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Michael L. Parkinson | Eileen P.H. Moore |
| Parkinson Law Office | Derek R. Molter |
| West Lafayette, Indiana | Eric J. McKeown |
| | Ice Miller LLP |
| John K. Morris | Indianapolis, Indiana |
| Morris Law Office | |
| Lafayette, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Guardianship: | August 21, 2020 |
| | Court of Appeals Case No. |
| Michael L. Parkinson, et al., | 19A-GU-1032 |
| *Appellants-Respondents,* | Appeal from the Tippecanoe Circuit Court |
| v. | The Honorable Sean M. Persin, Judge |
| Heidi Smith, | Trial Court Cause No. |
| *Appellee-Petitioner.* | 79C01-1512-GU-130 |

**Bradford, Chief Judge.**

# Case Summary

[1] This case involves a lengthy family dispute over access to William L. Parkinson and his assets. William died on December 27, 2017, after a battle with Alzheimer's disease. Prior to William's death, Heidi Smith, who is William's granddaughter, petitioned for a guardianship, alleging that William was unable to take care of his affairs and that Michael L. Parkinson, his son and Heidi's uncle, was asserting undue influence over William. Prior to William's death, the trial court appointed a guardian *ad litem* ("GAL") and indicated that a legal guardian was needed. However, William died before the trial court appointed a legal guardian. After William's death, Heidi requested attorney's fees pursuant to Indiana Code sections 29-3-9-9 and 29-3-4-4. Following a hearing, and over Michael's objection, the trial court awarded Heidi $413,872.17 in attorney's fees. Michael and his wife Yvonne Parkinson (collectively, "Appellants") appeal, arguing that the trial court abused its discretion in granting Heidi's request for attorney's fees. We affirm.

# Facts and Procedural History

[2] William was diagnosed with Alzheimer's disease in 2013. On December 4, 2015, Heidi petitioned for the appointment of a legal guardian for William ("the Petition").[1] In seeking the appointment of a legal guardian, Heidi expressed

---

[1] Heidi subsequently filed an amended petition in which she corrected certain procedural errors but did not amend any substantive issues.

concerns regarding William's ability to manage his property and care due to undue influence by Michael. William's counsel opposed Heidi's attempts to establish a guardianship for William, filing a motion to dismiss the Petition on December 15, 2015. Michael joined the motion to dismiss as an interested party. On March 9, 2016, the trial court dismissed the Petition, finding that it was barred by the doctrine of res judicata. Heidi appealed the dismissal of the Petition. On December 29, 2016, we reversed the dismissal of the Petition, concluding that it was not barred by res judicata. *See H.S. v. W.P.*, 66 N.E.3d 623 (Ind. Ct. App. 2016), *trans. denied*. The Indiana Supreme Court denied transfer and the case was remanded to the trial court for further proceedings. *Id.*

[3] During the time between Heidi's filing of the Petition and the reinstatement of the action in the trial court, William's health declined. Medical records from May of 2017 indicated that William required help with activities of daily living and "constant supervision." Appellee's App. Vol. II p. 37. On remand, William's counsel continued to resist Heidi's attempts to independently verify William's mental capacity.

[4] On June 8, 2017, Heidi sought the appointment of a GAL based on her concerns for William's mental capacity and his ability to protect his own interests or direct his own legal representation (the "GAL Motion"). Heidi also filed a motion for leave to have a medical examination of William performed. A few days later, Heidi filed a motion to compel William to sit for a deposition.

In the alternative, she again requested that the trial court appoint a GAL and order a medical examination of William.

[5] On June 30, 2017, the trial court held a hearing on the pending motions. The trial court granted Heidi's request to have a medical examination performed and scheduled a hearing on the GAL Motion for August 28, 2017. The trial court also granted Michael's motion to intervene. The medical examination was delayed due to a dispute as to whether it would be recorded.

[6] Following the August 28, 2017 hearing, the trial court granted Heidi's request to record William's medical examination. The trial court also determined that the appointment of a GAL was appropriate. Harry J. Falk was subsequently appointed as the GAL. The trial court directed the parties to "cooperate" with the GAL and set a status hearing for October 2, 2017. Appellee's App. Vol. II p. 118.

[7] On September 11, 2017, Martin R. Farlow, M.D., performed the court-ordered medical examination of William, finding that William "was unable to tell me what he had for dinner last night or breakfast this morning," that he "had no knowledge of previous hospitalizations," and that he "could not provide time, date, day of the week, month and said the year was 1949." Appellee's App. Vol. II p. 119. William "did not know where we were, and could not tell me where he lived," nor could he remember how many children he had. Appellee's App. Vol. II pp. 119–20. Dr. Farlow concluded, *inter alia*, that William "does not know the extent of his wealth" and "[a]t the current time he

would not have financial capacity to manage his estate, nor the capacity to appropriately manage healthcare or legal matters." Appellee's App. Vol. II p. 120. Moreover, Dr. Farlow concluded that "[a]t this stage his impairment has become so severe he no longer has capacity to meaningfully choose or delegate who should represent him in these matters." Appellee's App. Vol. II p. 120.

[8] On November 5, 2017, the GAL requested permission to retain an expert witness to conduct an accounting of substantial sums paid or transferred to Michael and/or Yvonne by William. The GAL noted that financial records produced in discovery "demonstrate that from August of 2015 until December of 2015, specifically, five (5) months, [William] paid approximately the sum of one hundred thirty-four thousand three hundred fifteen dollars ($134,315.00) to Michael" and that "in December of 2015 alone Michael … and/or Yvonne[2] … received almost the sum of seventy-five thousand dollars ($75,000.00)." Appellee's App. Vol. II p. 121. Also on November 5, 2017, William's counsel moved to continue the previously-scheduled December 2017 trial date, claiming that counsel had a previously-known but not mentioned scheduling conflict. Heidi opposed the motion to continue the trial date, expressing "grave concerns that any further delay in the resolution of this matter increases the risk that her grandfather (William) could pass away without the opportunity to reunite with estranged family members." Appellee's App. Vol. II p. 129.

---

[2] Yvonne also intervened in the underlying lawsuit.

[9]     The trial court conducted a status hearing on November 13, 2017, during which the GAL reported that "there is no way that [William] is able to care for anything" and "I've said it numerous times … [he] is not competent and he is unable to care for himself financially or medically." Tr. Vol. II pp. 104–05. The trial court found that William was "unable to sit for a deposition and as a consequence is unable to conduct his legal affairs and that a [legal] guardian is required for [William] and the question is who the [legal] guardian should be." Tr. Vol. II p. 105. The trial court's written order issued the next day also confirmed that William "lacks the capacity to sit for a deposition, and as a consequence, is unable to conduct his legal affairs and a [legal] guardian is required." Appellee's App. Vol. II p. 132. The trial court continued the trial date, rescheduling it for February 21–23, 2018, and directed the GAL to proceed with retaining the expert witness to examine the transfers from William to Michael.

[10]    On November 20, 2017, Heidi and the GAL filed a joint application to protect William's assets. On December 1, 2017, Heidi filed an emergency petition, seeking a temporary guardian over William's person and estate until such time as the trial court could conduct a final hearing on the merits. In the alternative, Heidi sought a protective order to protect William's estate and person pending a final hearing on the merits.

[11]    The trial court held a two-day evidentiary hearing on December 7 and 18, 2017. During the hearing, the GAL testified that William was "absolutely not" capable of managing his own property, stating that "he's not capable of

handling his own affairs, personally or personal or property." Tr. Vol. II p. 172. The GAL further testified that after reviewing records concerning the management of William's funds, he was "gravely concerned about the extent of the funds that are being spent" and "very concerned about the dissipation of [William's] assets" as "there are large sums of money that have been dissipated." Tr. Vol. II pp. 165, 174. The GAL further testified that he was "very concerned about when you have a person using a power of attorney to spend funds" and "very concerned about where this money is going." Tr. Vol. II p. 113.

[12] The trial court echoed the GAL's concerns, stating that it was "concerned about the allegation about how much money has been transferred and to whom," "concerned about what happened with the one trust going into the other trust," and that "[t]hose are things which are kind of alarming." Tr. Vol. II p. 169. The trial court also recognized that "there is a substantial amount of money that has been transferred for the benefit of Michael," Tr. vol. III p. 62, and that if William's assets were being depleted for the benefit of Michael or his wife, "that requires an intervention." Tr. Vol. III, p. 55. Further, the trial court stated its intention to "keep [the] corpus intact until [a] hearing [could] be held" and provide some protection for the proceeds of the sale of William's property should it occur before a final hearing. Tr. Vo1. III p. 80.

[13] In an order dated December 18, 2017, the trial court ordered that Heidi be allowed to visit William under the supervision of the GAL and without interference from Michael. The trial court also imposed several protections to

prevent further dissipation of William's assets pending a final guardianship determination. These protections included the following:

> 1. No cash withdrawals over $100.00 without the prior approval of [Michael], [the GAL], and the Court;
> 2. No transaction of any kind over $1,500.00 without the prior approval of [Michael], [the GAL], and the Court;
> 3. [Michael and the GAL] shall be provided with real time electronic access to the account and [have] the ability to review all transactions.

Appellants' App. Vol. III p. 80. These restrictions applied to "any funds belonging to William … or the William L. Parkinson Trust." Appellants' App. Vol. III p. 80. In addition, "[t]he approval of [Michael], [the GAL], and the Court must be obtained prior to selling, transferring, or otherwise disposing of any real property or other assets owned or held by William … or his Trust." Appellants' App. Vol. III p. 80. William passed away on December 27, 2017.

[14] On January 16, 2018, Heidi filed a request for attorney's fees and costs pursuant to Indiana Code sections 29-3-9-9 and 29-3-4-4. In doing so, Heidi detailed her efforts in the trial court action which she claimed resulted in numerous benefits for William, including, *inter alia*, preventing Michael from further dissipation of William's assets/estate, restricting the transfer or disposition of any real property or assets owned by William or his trust by Michael without approval, and giving William the opportunity to reunite with his granddaughter before his death. Michael opposed Heidi's request, arguing that Heidi was not entitled to attorney's fees because the December 18, 2017 order was not a protective order

and William was not a protected person. The trial court conducted a hearing on Heidi's petition on September 18, 2018. Near the conclusion of the hearing, the trial court acknowledged that Heidi's request for attorney's fees "hinge[d] on this issue of is there an order of protection in place or not." Tr. Vol. III p. 152. The trial court subsequently issued an order awarding Heidi $413,872.17 in attorney's fees.

# Discussion and Decision

Appellants contend that the trial court erred in granting Heidi's request for attorney's fees. "We review the trial court's award of attorney fees for an abuse of discretion." *Matter of Guardianship of Lamey*, 87 N.E.3d 512, 524 (Ind. Ct. App. 2017) (citing Ind. Code § 29–3–2–4; *In re Guardianship of Hickman*, 811 N.E.2d 843, 851 (Ind. Ct. App. 2004), *trans. denied*). "An abuse of discretion occurs only if the judgment is against the logic and effect of the facts and circumstances before the court, together with any reasonable inferences arising therefrom." *Id.* (citing *Hickman*, 811 N.E.2d at 851).

## I. Statutory Right to Fees

Appellants argue that the trial court abused its discretion in granting Heidi's request for attorney's fees because the trial court lacked statutory authority to order fees. We disagree. Pursuant to Indiana Code section 29-3-9-9:

> (a) Whenever a guardian is appointed for an incapacitated person
> or minor, the guardian shall pay all expenses of the proceeding,
> including reasonable medical, professional, and attorney's fees,

out of the property of the protected person.
(b) The expenses of any other proceeding under this article that results in a benefit to the protected person or the protected person's property shall be paid from the protected person's property as approved by the court.

"The right to compensation from the guardianship estate 'should not depend upon the result of the litigation but rather upon the reasonable necessity for such litigation.'" *Lamey*, 87 N.E.3d at 525 (quoting *In re Guardianship of N.R.*, 26 N.E.3d 97, 100 (Ind. Ct. App. 2015)).

> Thus, when ruling on an attorney fee petition in a guardianship proceeding, the trial court should consider not only the outcome of the proceedings but also "(1) whether the parties acted reasonably and in good faith incurring the fees, (2) whether the facts were in dispute, (3) whether the legal issues were complex, and (4) whether any party's misconduct caused the proceedings."

*Id.* (quoting *N.R.*, 26, N.E.3d at 100). "'A trial court may not award fees to a party whose misconduct necessitated the proceedings.'" *N.R.*, 26 N.E.3d at 100 (quoting *In re Guardianship of Shaffer*, 711 N.E.2d 37, 41 (Ind. Ct. App. 1999), *trans. denied*).

[17] On November 13, 2017, the trial court found that William was "unable to conduct his legal affairs and that a [legal] guardian is required for [William] and the question is who the [legal] guardian should be." Tr. Vol. II p. 105. The trial court scheduled further proceedings during which the court would hear argument regarding who should be appointed William's legal guardian. William, however, died before a legal guardian was appointed.

While Indiana Code section 29-3-9-9(a) provides for payment of attorney's fees in cases where a guardian has been appointed, Indiana Code section 29-3-9-9(b) provides for payment of expenses relating to other proceedings that result in benefit to a protected person or a protected person's property. Thus, if William qualifies as a protected person and the expenses requested benefited William or his property, the expenses "shall be paid from the protected person's property." Ind. Code § 29-3-9-9(b).

The term "'[p]rotected person' means an individual for whom a guardian has been appointed *or with respect to whom a protective order has been issued*." Ind. Code § 29-3-1-13 (emphasis added). With respect to protective orders, Indiana Code section 29-3-4-1 provides that

> (a) Upon petition by any person and after a hearing under IC 29-3-5, the court may issue, without the appointment of a guardian, any protective order for the benefit of a person who has been adjudicated an incapacitated person or is a minor.
> ****
> (d) The court may issue a protective order concerning an incapacitated person if the court finds that:
>> (1) the incapacitated person:
>>> (A) owns property or has income requiring management or protection that cannot otherwise be provided;
>>> (B) has or may have financial or business affairs that may be jeopardized or impaired; or
>>> (C) has property that needs to be managed to provide for the support or protection of the incapacitated person;

> (2) the incapacitated person is unable to manage the
> incapacitated person's property and financial or
> business affairs effectively; and
> (3) the protection sought is necessary.
> The court shall make the orders that it considers proper and
> appropriate to protect the person, business affairs, and property
> of the incapacitated person.

An "incapacitated person" is an individual who

> is unable:
> (A) to manage in whole or in part the individual's
> property;
> (B) to provide self-care; or
> (C) both;
> because of insanity, mental illness, mental deficiency, physical
> illness, infirmity, habitual drunkenness, excessive use of drugs,
> incarceration, confinement, detention, duress, fraud, undue
> influence of others on the individual, or other incapacity[.]

Ind. Code § 29-3-1-7.5(2).

[20]     In this case, the trial court acknowledged that resolution of Heidi's request for attorney's fees hinged on whether the court found William to be a protected person, stating "the court has heard evidence on the [GAL's] request for fees and petitioner's request for attorneys' fees *all which hinge on this issue of is there an order of protection in place or not*." Tr. Vol. III p. 152 (emphasis added). The trial court found that William qualified as an incapacitated person and issued an order to protect his personal and financial interests. In addition to putting restrictions in place to protect William's assets, the trial court appointed the GAL to act as an additional level of oversight over William and William's

property pending the resolution of the guardianship proceedings and ordered that Heidi, accompanied by the GAL, be granted the opportunity to visit William without interference from Michael.

[21] In granting Heidi's motion for attorney's fees, the trial court considered whether William received a benefit from the actions taken by Heidi on his behalf. Specifically, the trial court found as follows:

> As of December 27, 2017, this court heard evidence on the motion to appoint GAL and granted the same. The court heard evidence on Petitioner's request for visitation with her grandfather and granted the same. The court heard evidence over two days on the [j]oint [a]pplication to [p]rotect William['s] … [a]ssets and granted the same. The court made these rulings over the objection of Michael … and the attorneys for William.… The court heard limited evidence as to whether Michael … alienated other family members and received large sums of money from William … while acting as his attorney-in-fact. The court granted the [j]oint [a]pplication to [p]rotect William['s] … [a]ssets, giving the GAL access to William['s] … bank accounts and restricting cash withdrawals over $100.00 and other transactions over $1,500.00 without the prior approval of the GAL and the court.

> The order appointing GAL, the order for [v]isitation, and the temporary order to protect assets were issued for the sole benefit of William [ ], and he benefitted from these orders. Accordingly, Petitioner's request for fees related to these matters is granted. The court understands the counter-argument that the financial restrictions provided little relief since William … passed away just nine days later. However, Indiana law merely requires a benefit to the protected person.

Appellant's App. Vol. II p. 67. We will not reweigh the evidence with regard to the trial court's determination that William benefitted from the proceedings. *See Chavis v. Patton*, 683 N.E.2d 253, 260 (Ind. Ct. App. 1997).

[22]  In granting Heidi's request for attorney's fees under Indiana Code section 29-3-9-9, the trial court determined that William qualified as a protected person under the guardianship statutes and issued an order meant to protect William and his property. Given the record before us, we conclude that the trial court had statutory authority under Indiana Code section 29-3-9-9(b) to order that expenses relating to the proceedings be paid by William's estate. The trial court issued such an order. We cannot say that the trial court abused its discretion in this regard.

## II. Whether the December 18, 2017 Order was a Protective Order

[23]  Appellants alternatively raise numerous arguments asserting that the trial court's December 18, 2017 order, which set forth the protections for William and his property, did not qualify as protective order. Specifically, Appellants argue that a protective order cannot be a provisional order, that the December 18, 2017 order does not include the word "protective," and the December 18, 2017 order does not specifically list findings detailing the factors included in Indiana Code section 29-3-4-1(d). Appellants, however, cite to no authority, and we are aware of none, supporting their position that a protective order cannot be provisional or that it must contain the word "protective." As for Appellants' third argument, the record reveals that the trial court issued a

number of orders regarding William's incapacitation and the need for a protective order. The trial court's orders regarding William's inability to conduct his own legal affairs necessitating the oversight of the GAL and the appointment of a legal guardian read together with the December 18, 2017 order make it clear that the trial court considered all of the factors listed in Indiana Code section 29-3-4-1(d) when issuing the protective order. As such, we are unpersuaded by Appellants' argument.

## III. Bad Faith and Estoppel

[24] We have previously concluded that a trial court "may not award fees to a party whose misconduct necessitated the proceedings." *Shaffer*, 711 N.E.2d at 41. Appellants also argue that the trial court abused its discretion in granting Heidi's request for attorney's fees because misconduct by Heidi's former counsel necessitated the proceedings. In making this argument, however, Appellants only point to misconduct which they claim occurred during a prior case and/or in proceedings that occurred before we issued our prior opinion that Heidi's request for the appointment of a guardian was not barred by res judicata. *See H.S.*, 66 N.E.3d at 627.

[25] The parties have each accused the other side of less than optimal conduct at various points throughout the pendency of this case. However, in raising their claim on appeal, Appellants have pointed to no alleged misconduct by Heidi or her counsel since we remanded the case to the trial court for further proceedings. Heidi claims that Appellants' argument in this regard is without

merit as they do "not actually identify any misrepresentation by Heidi or her counsel." Appellee's Br. p. 49. She further claims that Appellants' arguments in this regard are "nothing more than a belated and impermissible collateral attack on this Court's resolution of the first appeal, where [Appellants] had a full opportunity to raise the same argument [they are] now raising here." Appellee's Br. p. 50. The trial court found Appellants' argument relating to the alleged misrepresentation by Heidi and her former counsel to be "borderline frivolous." Tr. Vol. III p. 182. We agree and conclude that Appellants' claims relating to bad faith and estoppel are without merit.

[26] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.